## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| Talal AL-ZAHRANI, et al.,      ) | |
|      ) | |
| Plaintiffs,      ) | |
|      ) | |
| v.      ) | Case No.: 1:09-CV-00028 (ESH) |
|      ) | |
| Donald RUMSFELD, et al.[1]      ) | |
|      ) | |
| and      ) | |
|      ) | |
| UNITED STATES,      ) | |
|      ) | |
| Defendants.      ) | |
| _____ ) | |

## INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
## PLAINTIFFS' CONSTITUTIONAL CLAIMS

Under Federal Rules of Federal Procedure 12(b)(1) and 12(b)(6), the individual

defendants hereby move to dismiss Plaintiffs' constitutional claims, Claims 5 and 6. These

claims, which seek damages for alleged constitutional violations under *Bivens v. Six Unknown

Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), must be dismissed because this

Court lacks subject matter jurisdiction over them. These claims are also subject to dismissal

because Plaintiffs have failed to state a claim upon which relief can be granted. The grounds for

dismissing Plaintiffs' constitutional claims are set forth in the accompanying memorandum of

points and authorities.[2] A proposed order is attached.

---

[1] For security reasons, the caption of this filing does not contain the individual defendants' residential addresses.

[2] The United States has filed a motion substituting itself as defendant for Plaintiffs' Alien Tort Statute claims against the individual defendants. *See* The United States' Mot. For Sub. for Claims I to IV of the Am. Compl.

Dockets.Justia.com

Dated: June 26, 2009

Respectfully submitted,

TONY WEST
Assistant Attorney General, Civil Division

TIMOTHY P. GARREN
Director, Torts Branch

ANDREA W. McCARTHY
Senior Trial Counsel


_____/s/ Paul E. Werner_____
ZACHARY C. RICHTER
(Texas Bar # 24041773, under LCvR 83.2(e)))
PAUL E. WERNER
(MD Bar, under LCvR 83.2(e)))
Trial Attorneys
UNITED STATES DEPARTMENT OF JUSTICE
Torts Branch, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044
(202) 616-4152 (phone)
(202) 616-4314 (fax)

Attorneys for the United States and the Individual
Named Defendants

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Talal AL-ZAHRANI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 1:09-CV-00028 (ESH) |
| | ) | |
| Donald RUMSFELD, et al. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF THE INDIVIDUAL DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' CONSTITUTIONAL CLAIMS**

TONY WEST
Assistant Attorney General, Civil Division

TIMOTHY P. GARREN
Director, Torts Branch

ANDREA W. McCARTHY
Senior Trial Counsel

ZACHARY C. RICHTER
(Texas Bar # 24041773, under LCvR 83.2(e)))
PAUL E. WERNER
(MD Bar, under LCvR 83.2(e)))
Trial Attorneys
UNITED STATES DEPARTMENT OF JUSTICE
Torts Branch, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044
(202) 616-4152 (phone)
(202) 616-4314 (fax)

Attorneys for the United States and the Individual Named Defendants

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -i-

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

I.     THIS COURT LACKS JURISDICTION TO CONSIDER PLAINTIFFS' CONSTITUTIONAL
CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

II.    SPECIAL FACTORS PRECLUDE THE COURT FROM IMPLYING A *BIVENS* REMEDY.   -5-

    A.    Plaintiffs' Claims Require Weighing both Foreign Policy and National
Security Considerations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

    B.    Foreign Policy and National Security Are Constitutionally Committed to
the Political Branches and Therefore Congress Should Decide on a
Remedy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

    C.    Implying a Damages Remedy for Plaintiffs Could Have a Detrimental
Effect on the Military. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

    D.    Plaintiffs' Claims Are in an Area Congress Has Already Addressed
Without Creating a Damages Remedy. . . . . . . . . . . . . . . . . . . . . . . . -14-

III.    QUALIFIED IMMUNITY BARS PLAINTIFFS' CONSTITUTIONAL CLAIMS. . . . . . . -17-

    A.    Plaintiffs Have Failed To Allege the Violation of Any Constitutional
Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

    B.    Plaintiffs Have Not Alleged that Defendants Violated Any Clearly
Established Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-

    C.    Plaintiffs Have Failed To Allege Defendants Personally Participated in a
Violation of Any Clearly Established Rights. . . . . . . . . . . . . . . . . . . . -23-

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -28-

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Al-Adahi v. Obama*, 596 F. Supp. 2d 111 (D.D.C. 2009)................................................28

*Anderson v. Creighton*, 483 U.S. 635 (1987) .......................................................17, 18, 21

\* *Ashcroft v. Iqbal*, No. 07-1015, 2009 WL 1361536 (U.S. May 18, 2009) ............... passim

*Baker v. Carr*, 369 U.S. 186 (1962)........................................................................9

*Behrens v. Pelletier*, 516 U.S. 299 (1996) .........................................................18

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ...................................24

*Bell v. Wolfish*, 441 U.S. 520 (1979) .................................................................20

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)................................................................................................5, 6

*Boumediene v. Bush*, 128 S. Ct. 2229 (2008) ........................................... passim

\* *Bush v. Lucas*, 462 U.S. 367 (1983) .............................................................5, 6, 7, 8

*Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001) ........................................22

*Carlson v. Green*, 446 U.S. 14 (1980) ..................................................................6

*Castaneda v. United States*, 546 F.3d 682 (9th Cir. 2008) ................................................5

\* *Chappell v. Wallace*, 462 U.S. 296 (1983) ........................................................ passim

*Correction Services Corp. v. Malesko*, 534 U.S. 61 (2001) ......................................6, 7, 23

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)........................................20

*Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000)...................................................5

*Davis v. Passman*, 442 U.S. 228 (1979) ..................................................................6

*FDIC v. Meyer*, 510 U.S. 471 (1994) .....................................................................7

*Gherebi v. Obama,* 609 F. Supp. 2d 43 (D.D.C. 2009) ....................................................9

*In re Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170 (2d Cir. 1998) ............................................................................................28

*In re Guantanamo Bay Detainee Litigation*, 577 F. Supp. 2d 312 (D.D.C. 2008) ...............................................................................................4

*In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443 (D.D.C. 2005), *vacated by Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *rev'd*, 128 S. Ct. 2229 (2008) ..........................................................................22

*Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) ...........................................27

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..................................17, 18

*Hope v. Pelzer*, 536 U.S. 730 (2002) ...................................................18

*Hunter v. Bryant*, 502 U.S. 224 (1991) ................................................18

*Ingraham v. Wright*, 430 U.S. 651 (1977) ...........................................19

\* *In re Iraq & Afg. Detainees Litigation*, 479 F. Supp. 2d 85 (D.D.C. 2007) ......3, 13, 14, 20

*Johnson v. Eisentrager*, 339 U.S. 763 (1950) .....................................13

*Kalka v. Hawk*, 215 F.3d 90 (D.C. Cir. 2000) ....................................18

*Khadr v. Bush*, 587 F. Supp. 2d 225 (D.D.C. 2008) ............................4

*Khalid v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005), *vacated by Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *rev'd*, 128 S. Ct. 2229 (2008) .....................22

\* *Kiyemba v. Obama*, 555 F.3d 1022 (D.C. Cir. 2009), *petition for cert. filed*, 77 U.S.L.W. 3577 (U.S. Apr. 3, 2009) (No. 08-1234) ................20

*Kiyemba v. Obama*, 561 F.3d 509 (D.C. Cir. 2009) .............................4

*Malley v. Briggs*, 475 U.S. 335 (1986) ..........................................18, 21

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ......................................18, 28

*Pearson v. Callahan*, 129 S. Ct. 808 (2009) ...................................18, 19

\* *Rasul v. Myers*, 563 F.3d 527 (D.C. Cir. 2009) .............................5, 10, 19, 22

*Rasul v. Rumsfeld*, 414 F. Supp. 2d 26 (D.D.C. 2006), *aff'd sub nom. Rasul v. Myers*, 512 F.3d 644 (D.C. Cir.), *vacated*, 129 S. Ct. 763 (2008), *aff'd per curiam on remand*, 563 F.3d 527 (D.C. Cir. 2009) ..............................................22

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008)..........................................24, 25, 26

\* *Sanchez-Espinoza v. Reagan*, 770 F. 2d 202 (D.C. Cir. 1985).................................8, 9, 12

*Saucier v. Katz*, 533 U.S. 194 (2001) ..............................................................................18

\* *Schneider v. Kissinger*, 412 F.3d 190 (D.C. Cir. 2005)................................................11, 12

\* *Schweiker v. Chilicky*, 487 U.S. 412 (1988) ......................................................................7, 15

*Simpkins v. District of Columbia Government*, 108 F.3d 366 (D.C. Cir. 1997) ..................................................................................................................19

*United States v. Gilman*, 347 U.S. 507 (1954)......................................................................6

*United States v. Standard Oil*, 332 U.S. 301 (1947)..............................................................6

*United States v. Stanley*, 483 U.S. 669 (1987)...........................................................7, 14, 15

*Wilkie v. Robbins*, 127 S. Ct. 2588 (2007) ......................................................................5, 7

*Wilson v. Layne*, 526 U.S. 603 (1999) .........................................................................21, 22

*Zweibon v. Mitchell*, 720 F.2d 162 (D.C. Cir. 1983) ..........................................................18

## STATUTES

10 U.S.C. § 801............................................................................................................16

\* 28 U.S.C. § 2241(e)(2).................................................................................................3, 4

42 U.S.C. § 2000dd.......................................................................................................16

42 U.S.C. § 2000dd-0(1), (2), (3) .................................................................................16

151 Cong. Rec. S14269 ................................................................................................16

Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001) ..........................................................................................................................9

Exec. Order No. 13,492, 74 Fed. Reg. 4,897 (Jan. 27, 2009)..........................................19

Nat'l Def. Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, 119 Stat. 3136, 3474-75 ................................................................................15

Ronald W. Reagan Nat'l Def. Authorization Act for Fiscal Year 2005, Pub. L. No. 108-375, 118 Stat. 1811, 2069-70 ....................................................15

Section 7 of the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600, 2635 ................................................................................3

The Gonzalez Act, 10 U.S.C. § 1089 ....................................................................4, 5

## INTRODUCTION

Plaintiffs are personal representatives of decedents Yasser Al-Zahrani and Salah Ali

Abdullah Ahmed Al-Salami, a Saudi and a Yemeni citizen whom the military detained at the

Guantánamo Bay Naval Base.  Plaintiffs bring constitutional claims on behalf of decedents'

respective estates against twenty-four named military officials, including former leaders of the

military.  Plaintiffs allege the conditions of decedents' confinement in Guantánamo Bay violated

decedents' Fifth and Eighth Amendment rights, and that Defendants were responsible for those

conditions.

The military first detained decedents in 2002, only months after the terrorist attacks of

September 11, while the United States was heavily engaged in military operations in Afghanistan

against al-Qaida and the Taliban—operations that continue to this day.  Just as in virtually every

other major military campaign in the past, detention and interrogation by the military of

suspected enemies has been a necessary part of the conflict with al-Qaida and the Taliban.  The

military held decedents in Guantánamo Bay from 2002 until they took their own lives in 2006.

Plaintiffs' constitutional claims should be dismissed under section 7 of the Military

Commissions Act of 2006 because this Court lacks jurisdiction to consider those claims.

Additionally, Plaintiffs seek a new remedy that implicates myriad considerations and concerns in

areas committed to the political branches.  Accordingly, under a special factors analysis,

Congress—not the courts—should decide whether to create a remedy here.  Indeed, the D.C.

Circuit recently held that special factors bar constitutional claims in cases such as Plaintiffs'

case.  Moreover, Defendants are entitled to qualified immunity because under governing D.C.

Circuit precedent, decedents do not have the rights Plaintiffs invoke, nor could those rights have

been clearly established during the time of their detention.  Here too, the D.C. Circuit recently

dismissed claims nearly identical to Plaintiffs' claims on qualified immunity grounds.  Also,

Plaintiffs' complaint fails to sufficiently allege Defendants personally participated in clearly

established violations consistent with the pleading standard recently enunciated by the Supreme

Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

## BACKGROUND

Plaintiffs filed a complaint on their own behalf and as representatives of their decedents'

respective estates in which they alleged decedents were subjected to abusive treatment while

detained by the military in Guantánamo Bay.  Am. Compl. ¶¶ 89-95, 133-41.  This treatment

allegedly included such harsh tactics as extended solitary confinement, sleep deprivation,

beatings, religious harassment, and force-feeding when decedents went on extended hunger

strikes.  *Id.* ¶¶ 89, 93, 96, 133, 138, 144.  In addition, the complaint avers that Defendants

specifically instituted these abusive practices in order to "break" detainees and thereby gain

intelligence from them.  *Id.* ¶ 62-63, 72.  The complaint further alleges that decedents' detention

in Guantánamo Bay was arbitrary, *id.* ¶ 82, 124, even though decedents went before a Combatant

Status Review Tribunal (CSRT), which determined decedents were properly detained as "enemy

combatants."  *Id.* ¶¶ 85, 128.

Based on the above, the complaint lists fourteen claims for relief, including four claims

under the Alien Tort Statute (Claims 1-4) and two claims under the Constitution (Claims 5-6)

against the Defendants, as well as eight claims under the Federal Tort Claims Act against the

United States (Claims 7-14).  This memorandum only addresses Claims 5 and 6, the

constitutional claims against the Defendants, which allege that Defendants' actions constituted

cruel and unusual punishment in violation of decedents' Eighth Amendment rights, *id.* ¶ 236, and also violated decedents' procedural and substantive due process rights under the Fifth Amendment. *Id.* ¶ 249.[3]

## ARGUMENT

This Court should dismiss Plaintiffs' constitutional claims for three reasons. First, this Court lacks jurisdiction to consider these claims. Second, Plaintiffs' claims raise numerous political and military concerns, which under a special factors analysis indicate that Congress alone should decide whether to create a remedy here, as the D.C. Circuit recently held. Third, Defendants are entitled to qualified immunity because decedents do not have the rights Plaintiffs claim, nor could those rights have been clearly established, and in any event, Plaintiffs fail to allege Defendants personally participated in the violation of any clearly established rights.[4]

## I. THIS COURT LACKS JURISDICTION TO CONSIDER PLAINTIFFS' CONSTITUTIONAL CLAIMS.

Section 7 of the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600, 2635 (codified at 28 U.S.C. § 2241(e)) ("MCA"), strips this Court of jurisdiction to hear Plaintiffs' constitutional claims. Under 28 U.S.C. § 2241(e)(2),

> no court . . . shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention . . . treatment . . . or conditions

---

[3]A separate motion to dismiss has been filed on behalf of the United States addressing the remaining claims. *See* The United States' Mot. to Dismiss Claims I to IV and VII to XIV of the Am. Compl.

[4]Defendants interpret Plaintiffs' complaint as seeking money damages only and address the complaint accordingly. To the extent Plaintiffs may seek declaratory relief against the Defendants, such relief is not available against federal officers sued in their individual capacities, as Defendants are here. *See, e.g.*, *In re Iraq & Afg. Detainees Litig.*, 479 F. Supp. 2d 85, 118-19 (D.D.C. 2007).

of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant.

This portion of the MCA remains intact, even after *Boumediene v. Bush*, 128 S. Ct. 2229 (2008) struck down the habeas-stripping portion of the MCA. *See Kiyemba v. Obama*, 561 F.3d 509, 512-13 (D.C. Cir. 2009) (implicitly acknowledging the validity of 28 U.S.C. § 2241(e)(2) after the *Boumediene* decision); *Khadr v. Bush*, 587 F. Supp. 2d 225, 234-37 (D.D.C. 2008) (upholding 28 U.S.C. § 2241(e)(2) after the *Boumediene* decision); *In re Guantanamo Bay Detainee Litig.*, 577 F. Supp. 2d 312, 314 (D.D.C. 2008) (same). As this Court said in *In re Guantanamo Bay*, *Boumediene* "held unconstitutional only that portion of [MCA] § 7 that extinguishes a court's jurisdiction 'to hear or consider an application for a writ of habeas corpus,'" and therefore, under the "long-standing rule of severability . . . § 7(a)(2) remains valid and strips [the court] of jurisdiction to hear a detainee's claims that 'relat[e] to any aspect of the detention, treatment, trial, or conditions of confinement,' 28 U.S.C. § 2241(e)(2)." 577 F. Supp. 2d at 314 (citation omitted).

Plaintiffs' constitutional claims fall plainly within 28 U.S.C. § 2241(e)(2). Their claims relate to the detention, treatment, and conditions of confinement of decedents. Am. Compl. ¶¶ 237, 246. Decedents were aliens detained by the United States. *Id.* ¶¶ 2, 11, 13. And the United States determined through CSRTs that decedents were properly detained as enemy combatants. *Id.* ¶¶ 85, 128. Accordingly, their claims against Defendants, who were agents of the United States, cannot be adjudicated by this Court, and must be dismissed for lack of subject matter jurisdiction.[5]

_____

[5]As to eight Defendants, yet another provision bars Plaintiffs' claims. The Gonzalez Act,
(continued...)

**II.     SPECIAL FACTORS PRECLUDE THE COURT FROM IMPLYING A *BIVENS* REMEDY.**

Even if this Court determines MCA § 7 does not bar Plaintiffs' constitutional claims, it should dismiss those claims on special factors grounds, as the D.C. Circuit recently did in *Rasul v. Myers*, 563 F.3d 527 (D.C. Cir. 2009) (*per curiam*), a case involving claims nearly identical to those of Plaintiffs.  Plaintiffs invite this Court to create a new remedy in an area fraught with foreign policy, national security, and military concerns.  With such concerns present, this Court should defer to Congress to decide whether Plaintiffs are entitled to a damages remedy.

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court implied a damages remedy for a violation of the Fourth Amendment where federal agents unlawfully entered a citizen's home in the United States and arrested him. *Id.* at 397.  The Court thereby recognized that, in limited circumstances, a cause of action for damages may be implied directly under the Constitution.  When deciding whether to imply a new remedy under *Bivens* for a constitutional violation—as this Court must here—a court acts like a common-law tribunal and weighs reasons for and against implying such a remedy.  *See Wilkie v. Robbins*, 127 S. Ct. 2588, 2598, 2600 (2007).  During this process, the court must "pay[] particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation."  *Id.* at 2598 (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983)).

---

[5](...continued)
10 U.S.C. § 1089, bars Plaintiffs' constitutional claims against Defendants Winkenwerder, Tornberg, Cowan, Arthur, Edmondson, Sollock, Burkhard, and Cullison.  Under the Gonzalez Act, a suit against the United States under the Federal Tort Claims Act is the exclusive remedy for any negligent or wrongful acts by military physicians committed within the scope of their federal employment.  *See* 10 U.S.C. § 1089(a).  The Gonzalez Act bars *Bivens* claims as well. *Cf. Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000) (holding that parallel statute for Public Health Service employees bars *Bivens* claims).  *But cf. Castaneda v. United States*, 546 F.3d 682, 701 (9th Cir. 2008) (holding that parallel statute does not bar *Bivens* claims).

When the Supreme Court first referred to "special factors counselling hesitation" in *Bivens*, it cited two cases to illustrate that phrase's meaning: *United States v. Standard Oil*, 332 U.S. 301 (1947) and *United States v. Gilman*, 347 U.S. 507 (1954). *See Bivens*, 403 U.S. at 396. Both of those cases involved federal fiscal policy and the relationship between the Government and its employees. *See Bush*, 462 U.S. at 380 (discussing *Bivens*'s reference to *Standard Oil* and *Gilman*). Where such concerns are present, Congress—and not the courts—should decide whether to create a damages remedy. *See Standard Oil*, 332 U.S. at 314; *Gilman*, 347 U.S. at 511-13.

In the nearly forty years since deciding *Bivens*, the Court has repeatedly identified new special factors counselling hesitation and has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). As the Court recently remarked in *Iqbal*, implied causes of action like *Bivens* are "disfavored." *Iqbal*, 129 S. Ct. at 1948. In fact, the Court has extended *Bivens* after determining there were no special factors counselling hesitation only twice, the most recent occasion being nearly three decades ago. *See Carlson v. Green*, 446 U.S. 14, 19 (1980) (implying damages remedy under Eighth Amendment for U.S. prisoner held in U.S. federal penitentiary after finding no special factors counselling hesitation); *Davis v. Passman*, 442 U.S. 228, 246 (1979) (implying damages remedy under Fifth Amendment for congressional aid fired on account of gender because Speech and Debate Clause provided Congressman with appropriate protection from liability). In almost every other attempt to extend *Bivens*, the Court has cited special factors counselling hesitation and thereby deferred to Congress to create a remedy.

For example, in *Bush v. Lucas*, the Court refused to imply a damages remedy for alleged

violations of the First Amendment arising out of a government personnel decision because Congress was in a better position to balance government efficiency with employee rights and decide whether such a remedy was good policy. 462 U.S. at 390. That same day, a unanimous Court refused to imply a *Bivens* remedy where military personnel sued their commanding officers because such a remedy could harm military decision-making and discipline and because the Constitution delegated military matters to the Legislative Branch. *See Chappell v. Wallace*, 462 U.S. 296, 301, 304 (1983). The Court later extended this holding to bar *Bivens* suits by former servicemen against civilian personnel. *See United States v. Stanley*, 483 U.S. 669, 679-80 (1987). In *Schweiker v. Chilicky*, 487 U.S. 412 (1988), the Court refused to imply a remedy for the improper denial of Social Security benefits because Congress was in a better position to decide whether to create such a remedy—as in *Bush*—and in fact had not done so. *See id.* at 426-27, 429. The Court in *FDIC v. Meyer*, 510 U.S. 471 (1994), refused to extend *Bivens* to suits against federal agencies in part because such an extension could greatly expand federal liability, and therefore the legislature should decide whether to create a remedy. *Id.* at 486. And most recently, in *Wilkie v. Robbins* the Court refused to imply a damages remedy against federal employees who "push too hard" in executing their duties because of the potential tide of litigation such a remedy could spawn, and instead left it to Congress to create any such remedy. 127 S. Ct. at 2604-05.[6]

As the above shows, at its core, a special factors analysis focuses not on the merits of a particular remedy, but rather on "the question of *who should decide* whether such a remedy

---

[6]*See also Malesko*, 534 U.S. at 70-71 (refusing to imply a *Bivens* remedy against a private corporation because *Bivens* was meant to deter individual federal officials from violating the Constitution, and suits against private corporations would not further that end).

should be provided." *Bush*, 462 U.S. at 380 (emphasis added). Courts have identified at least four special factors that indicate Congress, and not the courts, should decide whether to create a damages remedy for alleged constitutional violations. These special factors include where implying a remedy (1) involves the weighing and appraising of numerous broad policy considerations; (2) involves areas constitutionally committed to the political branches; (3) could have a detrimental impact on the effectiveness of the military; or (4) involves an area that has already received careful attention from Congress. Plaintiffs' claims implicate all four of these special factors.

### A. Plaintiffs' Claims Require Weighing both Foreign Policy and National Security Considerations.

Plaintiffs' claims require this Court to weigh and appraise serious foreign policy and national security considerations, and therefore this Court should defer to Congress to weigh those matters. As the D.C. Circuit explained, if implying a remedy requires weighing wide-ranging considerations, Congress, not the courts, should decide on a remedy: "Where . . . the issue 'involves a host of considerations that must be weighed and appraised,' its resolution 'is more appropriately for those who write the laws, rather than for those who interpret them.'" *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 208 (D.C. Cir. 1985) (quoting *Bush*, 462 U.S. at 380).

In *Sanchez-Espinoza*, the D.C. Circuit refused to create a *Bivens* remedy for plaintiffs, including non-resident aliens, who brought claims against high-level government officials for supporting the Contras, support which allegedly resulted in the "summary execution, murder, abduction, torture, rape, [and] wounding" of "innocent Nicaraguan civilians." 770 F.2d at 205. The court reasoned that implying such a remedy raised foreign policy concerns, could hinder the

government's foreign policy, and could potentially embarrass the government:

> [T]he special needs of foreign affairs must stay our hand in the creation of damage remedies against military and foreign policy officials for allegedly unconstitutional treatment of foreign subjects causing injury abroad. The foreign affairs implications of suits such as this cannot be ignored—their ability to produce what the Supreme Court has called in another context "embarrassment of our government abroad" through "multifarious pronouncements by various departments on one question."

*Id.* at 209 (quoting *Baker v. Carr*, 369 U.S 186, 226 (1962)). Accordingly, the court deferred to Congress: "[W]e think that as a general matter the danger of foreign citizens' [sic] using the courts in situations such as this to obstruct the foreign policy of our government is sufficiently acute that we must leave to Congress the judgment whether a damage remedy should exist." *Id.*

As in *Sanchez-Espinoza*, implying a *Bivens* remedy in Plaintiffs' case could have severe foreign policy implications and could lead to the "embarrassment of our government abroad" by "multifarious pronouncements by various departments on one question." *Baker*, 369 U.S. at 226. Plaintiffs challenge the methods of detaining and interrogating persons against whom Congress has authorized the use of military force ("AUMF detainees")[7]—methods employed as part of the government's effort to prevent future attacks. And the government has enlisted the aid of

---

[7]*See* Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001) ("AUMF"). Pursuant to the AUMF, the government has the authority to detain:

> persons the President determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, and persons who harbored those responsible for those attacks. The President also has the authority to detain persons who were part of, or substantially supported, Taliban or al Qaida forces or associated forces that are engaged in hostilities against the United States or its coalition partners, including any person who has committed a belligerent act, or has directly supported hostilities, in aid of such enemy armed forces.

*See Gherebi v. Obama,* 609 F. Supp. 2d 43, 70 (D.D.C. 2009) (adopting, with slight modifications, the foregoing definition).

foreign countries in locating, capturing, and detaining these potentially dangerous individuals.[8]
Judicial intrusion into this politically sensitive area by creating a damages remedy for detainees
could subvert these military and diplomatic efforts and lead to "embarrassment of our
government abroad." Thus, the court should not imply a *Bivens* remedy here and should instead
defer to Congress.

In fact, the D.C. Circuit recently held that—from the perspective of a special factors
analysis—cases like Plaintiffs' case are not distinguishable from *Sanchez-Espinoza*: "We see no
basis for distinguishing this case from *Sanchez-Espinoza*." *Rasul*, 563 F.3d at 532 n.5
(dismissing claims by former Guantánamo Bay detainees against high-level military officials for
violations of the Fifth and Eighth Amendments based on alleged mistreatment of plaintiffs while
detained at Guantánamo). Accordingly, the D.C. Circuit continued, "[p]laintiffs' *Bivens* claims
are . . . foreclosed" on special factors grounds. *Id.*

Here, not only do Plaintiffs' claims raise the foreign policy concerns present in *Sanchez-
Espinoza*, but they also raise national security concerns. The military detained and interrogated
decedents in an attempt to obtain vital intelligence. Am. Compl. ¶ 72, 94, 137. Such detention
and interrogation is a necessary part of the military's overall objective of ensuring national
security. Because Plaintiffs' claims involve the detention and interrogation of AUMF detainees
held at Guantánamo Bay, there can be no doubt their constitutional claims involve issues of
national security. These additional concerns only increase the "host of considerations" that must
be "weighed and appraised" here, and therefore Congress should be the body to decide whether

_____

[8]Indeed, Plaintiffs allege that Pakistani forces arrested decedent Al-Salami before turning
him over to the United States military. Am. Compl. ¶ 125.

to create a remedy.

**B.    Foreign Policy and National Security Are Constitutionally Committed to the Political Branches and Therefore Congress Should Decide on a Remedy.**

In addition to weighing a "host of considerations" in implying a remedy for Plaintiffs, this Court would need to intrude on areas constitutionally committed to the political branches, particularly Congress.  In *Chappell v. Wallace*, the Supreme Court, in refusing to imply a constitutional damages remedy for enlisted men against their superiors, emphasized the constitutional commitment of military matters to Congress.  462 U.S. at 300-04.  The Court, after noting that the Framers gave the Legislative Branch plenary control over military matters, *id.* at 301, explained that "[a]ny action to provide a judicial response by way of [a constitutional damages] remedy would be plainly inconsistent with Congress' authority in this field."  *Id.* at 304.

Here, Plaintiffs' claims implicate strong foreign policy and national security concerns. *See supra* Part II.A.  As the D.C. Circuit explained in *Schneider v. Kissinger*, 412 F.3d 190 (D.C. Cir. 2005), the Constitution textually commits matters of foreign policy and national security to the political branches—the Legislative and the Executive.  *Id.* at 194.  In *Schneider*, non-resident aliens brought various tort claims, including arbitrary detention and torture, against a former National Security Advisor for allegedly supporting a coup d'etat in Chile.  *Id.* at 191-92.  The court refused to exercise jurisdiction because of the Political Question Doctrine, focusing on the constitutional authority of Congress and the Executive to set foreign policy and provide national security: "It cannot . . . be denied that decision-making in the areas of foreign policy and national security is textually committed to the political branches."  *Id.* at 195.  In contrast, the court noted, Article III provides no such authority to the Judiciary: "[Article III] provides no authority

for policymaking in the realm of foreign relations or provision of national security." *Id.*

This Court's creation of a new damages remedy for allegedly unconstitutional military detention and interrogation practices would be "plainly inconsistent" with the political branches' authority in this field. *See Chappell*, 462 U.S. at 304. *Cf. Boumediene*, 128 S. Ct. at 2276 ("In considering both the procedural and substantive standards used to impose detention to prevent acts of terrorism, proper deference must be accorded to the political branches.") (citation omitted). Additionally, the reasons underlying the decision in *Schneider* apply all the more so here in a special factors analysis—as opposed to a political question analysis—because there is an underlying presumption against courts creating *Bivens* remedies in new contexts. *See supra* pp. 6-7. Therefore, the threshold for dismissal on special factors grounds is far lower than the threshold under the Political Question Doctrine. *See Sanchez-Espinoza*, 770 F. 2d at 208. Considering that Plaintiffs' claims are intimately intertwined with matters of foreign policy and national security, this Court should stay its hand and allow Congress to decide whether to create a damages remedy here.

**C.     Implying a Damages Remedy for Plaintiffs Could Have a Detrimental Effect on the Military.**

Plaintiffs' claims could potentially damage the military's effectiveness, which is yet another factor indicating Congress should decide whether to create a remedy.  In *Chappell*, the Supreme Court cited the "need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel"—along with the constitutional commitment of military matters to Congress—in refusing to imply a *Bivens* remedy for military personnel in suits against superiors. *Chappell*, 462 U.S. at 304.  These needs are no less present today than they were when the Court decided *Chappell*.  And here, they apply with equal force.  As this

Court noted in a similar case involving detainees in Iraq and Afghanistan claiming constitutional violations against military officials, allowing persons detained at Guantanamo Bay to sue for money damages against the highest military officials would cause those officials to hesitate when taking military actions, demoralize troops under their command, and erode the authority of those high officials:

> Military discipline and morale surely would be eroded by the spectacle of high-ranking military officials being haled into our own courts to defend against our enemies' legal challenges, which might leave subordinate personnel questioning the authority by which they are being commanded and further encumber the military's ability to act decisively.

*In re Iraq*, 479 F. Supp. 2d at 105.  This Court should not risk such an erosion of the military's effectiveness and should instead refrain from implying a new remedy.

Also, discovery in this case could reveal sensitive military information, information which could aid future terrorists in their attempts to attack the United States.  As this Court noted in *In re Iraq*: "The discovery process alone risks aiding our enemies by affording them a mechanism to obtain what information they could about military affairs . . . [including] the military's interrogation and detention policies, practices, and procedures."  *In re Iraq*, 479 F. Supp. 2d at 105.

This Court also noted that discovery could disrupt ongoing military operations by "wresting officials from the battlefield to answer compelled deposition and other discovery inquiries."  *Id.  See also Johnson v. Eisentrager*, 339 U.S. 763, 779 (1950) ("It would be difficult to devise more effective fettering of a field commander than to allow the very enemies he is ordered to reduce to submission to call him to account in his own civil courts and divert his efforts and attention from the military offensive abroad to the legal defensive at home.").

In addition to the discovery concerns, allowing a damages remedy against military

officials during an ongoing armed conflict would open the door for enemies to use our courts to hamper the military's efforts: "[A]uthorizing monetary damages remedies against military officials engaged in an active war would invite enemies to use our own federal courts to obstruct the Armed Forces' ability to act decisively and without hesitation in defense of our liberty and national interests." *In re Iraq*, 479 F. Supp. 2d at 105.

Furthermore, implying a *Bivens* remedy for Plaintiffs would have the paradoxical effect of granting our enemies a right that is denied to United States soldiers fighting to defend this country. Under *Stanley* and *Chappell*, military personnel who allege they suffered violations of their constitutional rights incident to military service have no right to a damages remedy. *See Stanley*, 483 U.S. at 684-85; *Chappell*, 462 U.S. at 304. But by implying a remedy here, the court would give exactly that right to persons against whom Congress has authorized the use of military force. Given the above concerns, this Court should defer to Congress to decide whether to create a remedy here.

### D. Plaintiffs' Claims Are in an Area Congress Has Already Addressed Without Creating a Damages Remedy.

Lastly, Plaintiffs' claims invite this Court to delve into an area that has already received careful attention from Congress, and this Court should therefore respect the decisions of a coordinate branch of government and refrain from implying a remedy here. In *Schweiker v. Chilicky*, the Supreme Court noted that "special factors counselling hesitation" include "an appropriate judicial deference to indications that congressional inaction has not been inadvertent." 487 U.S. at 423. There, the Court refused to imply a remedy for alleged due process violations in the improper denial of Social Security benefits. *Id.* at 429. The Court reasoned that congressional attention to the issue at hand had been "frequent and

intense"—Congress had passed two laws within four years after problems in benefit denials arose—and yet Congress had not provided the remedy plaintiffs sought. *Id.* at 425-26. Congress's failure to provide plaintiffs a remedy was not an invitation for courts to do so: "The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Id.* at 421. *See also Stanley*, 483 U.S. at 683 ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [plaintiff] . . . an 'adequate' federal remedy for his injuries."). Therefore, "frequent and intense" congressional attention to an issue indicates that judicial intervention in that area is inappropriate, particularly when Congress has not given plaintiffs the remedy they seek.

Here, congressional attention to detainee treatment has been "frequent and intense." From 2004 to 2006, Congress passed three laws concerning the treatment of military detainees. *See* MCA; Nat'l Def. Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, 119 Stat. 3136, 3474-75 (codified at 42 U.S.C. 2000dd) ("Detainee Treatment Act"); Ronald W. Reagan Nat'l Def. Authorization Act for Fiscal Year 2005, Pub. L. No. 108-375, 118 Stat. 1811, 2069-70 (codified at 10 U.S.C. § 801, stat. note §§ 1091-92) ("Reagan Act"). And yet in none of these laws did Congress provide detainees with a private damages remedy. If anything, Congress *restricted* the availability of such a remedy.

Section 1092 of the Reagan Act obligated the Department of Defense to institute policies and specific procedures to ensure detainees would be treated humanely. *See* 10 U.S.C. § 801, stat. note § 1092(a), (b). Congress entrusted the military to prosecute those who mistreated detainees. *Id.*, stat. note § 1091(a)(4), (5). The legislature refrained, however, from creating a

private cause of action for detainees.

Like the Reagan Act, the Detainee Treatment Act obligated the military to treat detainees humanely. Section 1403, known as the "McCain Amendment," ordered that detainees may not be subjected to cruel, inhuman, or degrading treatment, regardless of where they are located. *See* 42 U.S.C. § 2000dd. Again, Congress did not create a cause of action for detainees. As Senator John McCain, who authored the legislation, said, section 1403 did "not create a new private right ot [sic] action." 151 Cong. Rec. S14269 (daily ed. Dec. 21, 2005) (statement of Sen. McCain).

And in the MCA, Congress again addressed the treatment of detainees and again decided not to create a judicially cognizable damages remedy for mistreatment. Section 6(c) of the MCA reiterated that detainees may not be subjected to cruel, inhuman, or degrading treatment and defined such treatment as any punishment or treatment in violation of the Fifth or Eighth Amendments. 42 U.S.C. § 2000dd-0(1), (2). But the Act left enforcement of these provisions to the Executive Branch, not the Judiciary. *Id.* § 2000dd-0(3).

In fact, to the extent the MCA addressed damages remedies for detainees, it precluded any such remedies. In section 7, Congress declared that courts lack jurisdiction to hear civil claims by alien detainees regarding the conditions of their confinement when the United States has determined such alien detainees have been properly detained as "enemy combatants." MCA § 7(a)(2). Accordingly, to the extent that Congress has addressed the issue of a private damage remedy for alien detainees in this context, it has opted to preclude such a remedy rather than create a claim. Therefore, even if this Court determines the MCA does not bar Plaintiffs' claims outright, at the very least it should not *imply* a remedy in the face of such a legislative determination by Congress.

As the above history demonstrates, congressional attention to the treatment of detainees at Guantánamo has indeed been "frequent and intense"—as much as, if not more so, than it was to the issue at hand in *Schweiker*.  And like in *Schweiker*, Congress never provided Plaintiffs the remedy they now seek from the court, and actually precluded the availability of such a remedy. Therefore, this Court should not ignore Congress's clear directives and should instead reject Plaintiffs' request to create a remedy here.

## III.    QUALIFIED IMMUNITY BARS PLAINTIFFS' CONSTITUTIONAL CLAIMS.

Even if this Court determines there are no "special factors counselling hesitation," Plaintiffs' constitutional claims still fail because Defendants are entitled to qualified immunity. In their constitutional claims, Plaintiffs attempt to recover damages from Defendants' personal resources.  The courts have long noted that such individual-capacity actions "entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties."  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (citation omitted).

In addressing these concerns, the Supreme Court has established the defense of qualified immunity.  *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Qualified immunity shields officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* at 818.  *See also Kalka v. Hawk*, 215 F.3d 90, 94 (D.C. Cir. 2000). Fundamentally, qualified immunity is a "fair notice" requirement, *Hope v. Pelzer*, 536 U.S. 730, 739 (2002), which is intended to protect government officials from suit unless they are "plainly incompetent or . . . knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  *See*

-17-

*also Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983) (defining clearly established right as an "indisputable" or "unquestioned" right).

The Supreme Court has emphasized that in order to ensure that qualified immunity shields officials from the fear of civil damages as well as the harassment of litigation, *Anderson*, 483 U.S. at 638, qualified immunity contains an "entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citation omitted). It is "an *immunity from suit* rather than a mere defense to liability." *Id.* (emphasis in original). Accordingly, the Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*) (citations omitted). *See also Behrens v. Pelletier*, 516 U.S. 299, 308 (1996); *Harlow*, 457 U.S. at 817.

To overcome qualified immunity, a plaintiff must allege facts that if proven would show both that the defendants violated a constitutional right, and that the right was clearly established. Until recently, courts needed to determine first whether a constitutional right had been violated, and then whether the violated right was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Now, however, a district court need not determine whether a constitutional right was violated, and instead may simply determine that no clearly established rights were violated. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (holding that courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). Also, a plaintiff must allege that the defendants personally participated in a violation of a clearly established right. *See Iqbal*, 129 S. Ct. at 1947-49; *see also Simpkins v. Dist. of Columbia Gov't*,

108 F.3d 366, 369 (D.C. Cir. 1997). *Bivens* claims cannot rest on *respondeat superior* or supervisory liability. *See Iqbal*, 129 S. Ct. at 1947-49.

Here, this Court should grant qualified immunity for all Defendants on clearly established grounds. The Court should proceed directly to the clearly established prong of qualified immunity both because analysis of this prong is straightforward here, *see infra* Part III.B, and because a constitutional decision would have limited precedential value given the current Administration's plans to close the Guantánamo Bay detention facilities.[9] Nevertheless, Defendants are immune from suit under both prongs: Plaintiffs have failed to allege a violation of any constitutional rights recognized under governing circuit precedent, never mind any clearly established ones. Furthermore, Plaintiffs have failed to allege that Defendants personally participated in a violation of any clearly established rights.

### A.      Plaintiffs Have Failed To Allege the Violation of Any Constitutional Rights.

Plaintiffs' claim that decedents' Eighth Amendment rights were violated is easily resolved. The Eighth Amendment applies only to convicted criminals. *See Ingraham v. Wright*, 430 U.S. 651, 664 (1977); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998); *Bell v. Wolfish*, 441 U.S. 520, 579 (1979) (Stevens, J., joined by Brennan J., dissenting). Plaintiffs themselves allege that decedents were never charged, let alone convicted. Am. Compl. ¶ 3. Therefore, they cannot assert an Eighth Amendment claim. *See In re Iraq*, 479 F. Supp. 2d

---

[9]*See* Exec. Order No. 13,492, 74 Fed. Reg. 4,897 (Jan. 27, 2009) (ordering the detention facilities in Guantánamo Bay closed by January 22, 2010). The D.C. Circuit, in applying qualified immunity in a case similar to Plaintiffs' case, proceeded directly to the clearly established prong because "[c]onsiderations of judicial restrain favor[ed] exercising the *Pearson* option" for the plaintiffs' constitutional claims and because the immunity question was one that the court could "'rather quickly and easily decide.'" *Rasul*, 563 F.3d at 530 (quoting *Pearson*, 129 S. Ct. at 820).

at 103 (dismissing Eighth Amendment claim by former detainees in Iraq and Afghanistan because they were never convicted of a crime).

Resolution of Plaintiffs' due process claim is also straightforward.  This Court is bound by the D.C. Circuit's recent decision in *Kiyemba v. Obama*, 555 F.3d 1022 (D.C. Cir. 2009), *petition for cert. filed*, 77 U.S.L.W. 3577 (U.S. Apr. 3, 2009) (No. 08-1234).  In *Kiyemba*—a habeas case involving Uighers[10] held in Guantánamo Bay—the D.C. Circuit emphatically stated that the due process clause does not extend to aliens detained in Guantánamo Bay: "Decisions of the Supreme Court and of this court . . . hold that the due process clause does not apply to aliens without property or presence in the sovereign territory of the United States."  *Id.* at 1026-27 & n.9 (citing cases and noting that Guantánamo Bay is not part of the sovereign territory of the United States).  The Supreme Court's earlier decision in *Boumediene* did not change this: "[A]s the Court recognized, it had never extended any constitutional rights to aliens detained outside the United States; *Boumediene* therefore specifically limited its holding to the Suspension Clause."  *Kiyemba*, 555 F.3d at 1032 (citing *Boumediene*, 128 S. Ct. at 2262).  Because decedents were aliens without property or presence in the sovereign territory of the United States, Plaintiffs cannot state a due process claim consistent with controlling circuit authority.

**B.    Plaintiffs Have Not Alleged that Defendants Violated Any Clearly Established Rights.**

Even if this Court finds that Plaintiffs stated a violation of decedents' constitutional rights—which it cannot—Defendants are still entitled to qualified immunity because any such rights were not clearly established.  For a right to be clearly established, it must be sufficiently

---

[10]Uighers are Turkish Muslims who live in the Xinjiang region of China.

developed by case law so as to provide an official with specific guidance: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. The illegality of the officer's actions must, in the light of pre-existing law, "be apparent." *Id.*

As already explained, the D.C. Circuit has announced that decedents do not have the rights Plaintiffs claim. Therefore, those rights cannot in any sense have been clearly established.[11] Moreover, in *Boumediene*, the Court remarked that "before today the Court has never held that noncitizens detained by our Government in territory over which another country maintains *de jure* sovereignty have *any rights* under our Constitution." 128 S. Ct. at 2262 (emphasis added). The Court's recognition that its 2008 holding was novel underscores that any rights decedents had during their detention from 2002 until 2006 could not have been clearly established.

In addition, the D.C. Circuit recently held in *Rasul* that any constitutional rights Guantánamo Bay detainees had were not clearly established as of 2004. *See Rasul*, 563 F.3d at 530 & n.2. In the two years that followed until decedents' death, the majority of courts refused to recognize that aliens held at Guantánamo Bay were entitled to constitutional protections under

---

[11]Although the Plaintiffs may argue that the D.C. Circuit erred in *Kiyemba* in concluding that the Fifth Amendment Due Process Clause does not cover aliens detained by the military in Guantánamo Bay, the qualified immunity issue does not turn on whether *Kiyemba* was correctly decided. Rather, qualified immunity is intended to be so broad as to protect all but the "plainly incompetent or those who knowingly violate the law." *Malley*, 475 U.S. at 341. Therefore, to deny qualified immunity to Defendants in this action in the face of the *Kiyemba* decision would be tantamount to finding that the decision was not merely incorrect, but that the analysis was "plainly incompetent." That explains the Supreme Court's observation in *Wilson v. Layne*, 526 U.S. 603, 618 (1999), "[when judges] disagree on a constitutional question, it is unfair to subject [public employees] to money damages for picking the losing side of the controversy."

the Fifth or Eighth Amendments. *See Rasul v. Rumsfeld*, 414 F. Supp. 2d 26, 44 (D.D.C. 2006) (describing the possible availability of constitutional rights for Guantánamo Bay detainees as "unsettled"), *aff'd sub nom. Rasul v. Myers*, 512 F.3d 644 (D.C. Cir.), *vacated*, 129 S. Ct. 763 (2008), *aff'd per curiam on remand*, 563 F.3d 527 (D.C. Cir. 2009); *Khalid v. Bush*, 355 F. Supp. 2d 311, 323 (D.D.C. 2005) (holding that Guantánamo Bay detainees have no constitutional rights), *vacated by Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *rev'd*, 128 S. Ct. 2229 (2008). *But see In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443, 464 (D.D.C. 2005) (holding that Guantánamo Bay detainees have due process rights), *vacated by Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *rev'd*, 128 S. Ct. 2229 (2008). Although there was some divergence in the district courts on this question after 2004, there was nothing that might alter the qualified immunity analysis. Isolated district court decisions are not enough normally to clearly establish the law for qualified immunity purposes. *See Butera v. District of Columbia*, 235 F.3d 637, 652 (D.C. Cir. 2001) (stating that courts must look to Supreme Court and circuit court precedent to determine whether the law in an area is clearly established) (citations omitted). This is especially true when there is a dispute between the courts. Where courts disagree, qualified immunity applies. *See Wilson*, 526 U.S. at 618.

C.    **Plaintiffs Have Failed To Allege Defendants Personally Participated in a Violation of Any Clearly Established Rights.**

Even had Plaintiffs succeeded in alleging some constitutional violation in the abstract, the named Defendants would still be entitled to qualified immunity on the ground that Plaintiffs failed to properly allege Defendants' personal involvement in any clearly established violation. *Bivens* aims to "deter individual federal officers from committing constitutional violations," and therefore *Bivens* liability is limited to those "directly responsible" for such violations. *Malesko*,

534 U.S. at 70-71.

As the Supreme Court recently made clear in *Ashcroft v. Iqbal*, claims against high government officials must contain factual allegations plausibly suggesting those officials' direct involvement in constitutional violations for the claims to survive a motion to dismiss. In *Iqbal*, the plaintiff alleged that John Ashcroft, the former Attorney General of the United States, and Robert Mueller, the Director of the Federal Bureau of Investigation, adopted an unconstitutional policy in the wake of the September 11 terrorist attacks that subjected the plaintiff, an Arab Muslim, to harsh conditions of confinement because of his race, religion, or national origin. *See Iqbal*, 129 S. Ct. at 1942. In dismissing the plaintiff's claims, the Court emphasized that conclusory allegations—such as allegations that officials "knew of, condoned, and willfully and maliciously agreed" to subject the plaintiff to constitutional violations—may be ignored. *Id.* at 1951 (quoting *Iqbal* Compl.). Allegations that officials approved of or acquiesced in subordinates' constitutional violations cannot support a claim either. *Id.* at 1949. Rather, under Federal Rule of Civil Procedure 8, a complaint must contain well-pled factual allegations that plausibly suggest wrongdoing by the official—which means the facts cannot be more likely explained as lawful conduct. *Id.* at 1950-51.[12]

Accordingly, neither *respondeat superior* nor supervisory liability—holding an officer liable for knowledge of and acquiescence in a subordinate's unconstitutional conduct—applies in constitutional claims. *See id.* at 1947-49 (holding that government officials "may not be held accountable for the misdeeds of their agents"). Instead, a defendant may be liable only for

---

[12]The Court also emphasized that denials of qualified immunity where defendants argue the complaint lacks sufficient allegations of personal involvement are immediately appealable. *See Iqbal*, 129 S. Ct. at 1946.

personally participating in a constitutional violation. *See id.* at 1949 ("[E]ach Government official . . . is only liable for his or her own misconduct.").

To show such personal participation, a plaintiff must set out factual allegations that are "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (citations omitted). As the *Twombly* Court said, a viable claim for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1965; *see also Iqbal*, 129 S. Ct. at 1949-50. To state a claim for relief, a plaintiff must allege facts that are "plausible"—suggestive of wrongdoing—with enough allegations to give defendants fair notice of the claims against them. *See Twombly*, 127 S. Ct. at 1964, 1966 n.5. *Twombly*'s plausibility standard has "greater bite" in complex constitutional claims against numerous federal defendants because of the special interest in resolving qualified immunity defenses at the earliest stages of litigation. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). In such cases—like Plaintiffs' case here—the complaint must make clear "exactly *who* is alleged to have done *what* to *whom*" so as to give each individual defendant fair notice of the basis of the claims against him. *Id.* at 1250 (emphases in original).

Applying this standard to Plaintiffs' complaint, Plaintiffs have made meaningful factual allegations as to only *six* of the twenty-four named Defendants—Defendants Rumsfeld, Craddock, Winkenwerder, Hood, Edmondson, and Sollock[13]—and for those six Defendants, the

---

[13]As noted in the Statement Noting a Party's Death, Defendant Sollock passed away during the pendency of this action.

allegations boil down to two alleged acts against the decedents, neither of which involved a clearly established violation. For the remaining eighteen named Defendants, Plaintiffs' complaint lacks factually suggestive allegations which could make out a plausible claim under *Iqbal* and *Twombly*. Instead, Plaintiffs attempt to hold Defendants liable under supervisory liability, which does not apply in *Bivens* claims. *See supra* p. 23.

At the outset, the complaint contains no specific allegations for eight of the named Defendants—Defendants Pace, Carrico, Rodriguez, Tornberg, Cowan, Arthur, Burkhard, and Cullison—other than the boilerplate allegation that each of these Defendants (along with every other named Defendant) was involved in "ordering, authorizing, condoning, creating methods and procedures for, exercising command responsibility over, conspiring with, aiding and abetting subordinates, and/or directly or indirectly participating in the abuses of . . . the deceased." Am. Compl. ¶¶ 17, 25, 30, 32, 33, 34, 37, 38. This boilerplate allegation contains no facts and is conclusory. *See Iqbal*, 129 S. Ct. at 1951 (describing as "conclusory" bare allegation that officials "knew of, condoned, and willfully and maliciously agreed to subject" plaintiff to abuses "as a matter of policy" for unconstitutional reasons (quoting *Iqbal* Compl.)). The only other allegations potentially involving these Defendants are the general allegations in the complaint against "Defendants." *See, e.g.*, Am. Compl. ¶¶ 184-87. Such allegations against "Defendants," in a suit involving twenty-four named and 100 unnamed defendants, do not give fair notice to the individual Defendants of the specific grounds for the claims against them. *See Robbins*, 519 F.3d at 1250 (discounting allegations against "Defendants" because individual defendants could not ascertain which unconstitutional acts they were alleged to have committed). Therefore, the above eight Defendants should be dismissed from the complaint because Plaintiffs have not

alleged they personally participated in any constitutional violations.

For seven other named Defendants—Defendants Lehnert, Hood, Harris, McQueen, Cannon, Bumgarner, and Dennis—the complaint's specific allegations about them are factually neutral and could only support a supervisory theory of liability. *See, e.g.*, Am. Compl. ¶ 60 (named Defendants issued "standard operating procedures" for Guantánamo Bay detention facilities); *id.* ¶ 163 (named Defendants "accountable for operations" of Behavioral Healthcare Services at Guantánamo). Therefore, these Defendants should be dismissed from the complaint as well. *See Iqbal*, 129 S. Ct. at 1949.

Although Plaintiffs' allege that Defendant Rumsfeld, at the request of Defendants Dunlavey, Hill, Myers, and Miller, signed a memorandum approving numerous harsh interrogation tactics, Am. Compl. ¶ 62, Plaintiffs do not actually allege that any of those tactics were used against either decedent. Of the litany of harsh methods allegedly approved, the only authorized method which may have been used on one of the decedents was "shaving [detainees] heads and beards," *id.*, which Plaintiffs merely imply was employed on decedent Al-Zahrani. *Id.* ¶ 93. However, it is unclear from Plaintiffs' complaint if anyone at Guantánamo—never mind Defendants—ever shaved decedent Al-Zahrani's head. *See id.* ¶ 93 (discussing how the military "shaved detainees' heads and beards" but failing to allege that decedent's head and beard were shaved). Although Plaintiffs allege that decedents suffered other abuses in detention, such as beatings by Emergency Reaction Force units and month-long sleep deprivation, *id.*, they fail to allege that Defendant Rumsfeld authorized—or that any of the named Defendants were

personally involved in—these alleged abuses.[14]

Plaintiffs' claim that Defendant Rumsfeld was involved in the decision to detain AUMF detainees—including decedents—at Guantánamo, *id.* ¶ 44, while adequately pled, fails to allege he personally participated in a violation of any clearly established constitutional rights.  First, such detention is a "fundamental incident" of an ongoing armed conflict, *Hamdi v. Rumsfeld*, 542 U.S. 507, 519 (2004), and is permissible so long as detainees receive adequate process.  *Id.* at 535-38.  Second, as for decedents' lack of adequate process, Plaintiffs state that CSRTs were instituted in July 2004, Am. Compl. ¶ 48, almost immediately after the *Hamdi* decision declared the need for process.  With regard to the CSRTs' procedural shortcomings, Plaintiffs do not allege that Defendant Rumsfeld designed the CSRT system or actually conducted decedents' CSRTs.  Rather, Plaintiffs allege that the Deputy Secretary of Defense—who is not named in this complaint—issued the procedures for the CSRTs.  *Id.*  Even if Plaintiffs could connect Defendant Rumsfeld to the CSRT process, that process was not declared insufficient until *Boumediene* in 2008, *see Boumediene*, 128 S. Ct. at 2274, and thus Defendant Rumsfeld could not have violated any clearly established procedural due process rights of decedents based on the CSRT process between 2002 and 2006.  *See Mitchell*, 472 U.S. at 535 ("[O]fficials performing discretionary functions are not subject to suit when . . . questions are resolved against them only after they have acted.").  Therefore, while Plaintiffs have alleged Defendant Rumsfeld was involved in the decision to detain decedents, Plaintiffs have failed to allege that he personally

---

[14]Plaintiffs also generally allege that Defendants Rumsfeld, Dunlavey, Hill, Myers, and Miller "intended, were aware, or should have been aware" that detainees were being tortured. Am. Compl.¶ 188.  However, that is the precise type of conclusory allegation that is entitled to no consideration under *Iqbal*.  *See Iqbal*, 129 S. Ct. at 1951.

participated in a clearly established violation of decedents' constitutional rights.

Similarly, Plaintiffs' allegations that Defendants Craddock, Winkenwerder, and Hood "introduced and approved" force-feeding with restraint chairs, *id.* ¶ 69, while Defendants Edmondson and Sollock "supervised and implemented force-feeding" of decedents, *id.* ¶ 70, also fail to allege a violation of any clearly established rights. Plaintiffs aver that Defendants force-fed decedents because decedents went on extended hunger strikes. *Id.* ¶¶ 96, 142-44. Force-feeding hunger-striking detainees is not a constitutional violation. *See Al-Adahi v. Obama*, 596 F. Supp. 2d 111, 120-22 (D.D.C. 2009) (stating that force-feeding hunger-striking Guantánamo Bay detainees with restraint chairs does not violate the Constitution); *see also In re Grand Jury Subpoena John Doe v. United States*, 150 F.3d 170, 172 (2d Cir. 1998) (*per curiam*). Therefore, Plaintiffs have failed to allege that these five Defendants personally participated in a constitutional violation and their claims should be dismissed on qualified immunity grounds.

## CONCLUSION

Congress has barred this Court from considering Plaintiffs' constitutional claims. Additionally, Plaintiffs attempt to enmesh this Court in an area reserved for coordinate branches of government and fraught with political and military concerns. The Court itself would need to create a new remedy to become enmeshed in the first place. Accordingly, under a special factors analysis, this Court should defer to Congress to create any such remedy. Moreover, a *Bivens* remedy would not help Plaintiffs because Defendants are entitled to qualified immunity: the Fifth and Eighth Amendments do not extend to Guantánamo Bay detainees under governing circuit precedent, the existence of any such rights could not have been clearly established during decedents' detention, and Plaintiffs fail to allege Defendants personally participated in any

clearly established violations.  For these reasons, Defendants respectfully request that this Court

dismiss Plaintiffs' constitutional claims with prejudice.


Dated: June 26, 2009                                   Respectfully submitted,

                                                       TONY WEST
                                                       Assistant Attorney General, Civil Division

                                                       TIMOTHY P. GARREN
                                                       Director, Torts Branch

                                                       ANDREA W. McCARTHY
                                                       Senior Trial Counsel


                                                       _____/s/ Paul E. Werner_____
                                                       ZACHARY C. RICHTER
                                                       (Texas Bar # 24041773, under LCvR 83.2(e)))
                                                       PAUL E. WERNER
                                                       (MD Bar, under LCvR 83.2(e)))
                                                       Trial Attorneys
                                                       UNITED STATES DEPARTMENT OF JUSTICE
                                                       Torts Branch, Civil Division
                                                       P.O. Box 7146
                                                       Ben Franklin Station
                                                       Washington, D.C.  20044
                                                       (202) 616-4152 (phone)
                                                       (202) 616-4314 (fax)

                                                       Attorneys for the United States and the Individual
                                                       Named Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Pardiss Kebriaei
Shayana Kadidal
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
pkebriaei@ccrjustice.org
*Counsel for Plaintiffs*

Meetali Jain
International Human Rights Clinic
American University
WASHINGTON COLLEGE OF LAW
4801 Massachusetts Ave., N.W.
Washington, DC 20016
mjain@wcl.american.edu
*Counsel for Plaintiffs*

   /s/ Paul E. Werner   
PAUL E. WERNER
(MD Bar, under LCvR 83.2(e))
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, DC 20044
(202) 616-4152 (phone)