# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| Talal AL-ZAHRANI, et al.,      ) | |
|           ) | |
|       Plaintiffs,    ) | |
|     v.            ) | **Case No.: 1:09-CV-00028 (ESH)** |
|           ) | |
| Donald RUMSFELD, et al.    ) | |
|           ) | |
| and           ) | |
|           ) | |
| UNITED STATES,      ) | |
|           ) | |
|       Defendants.    ) | |

## REPLY MEMORANDUM IN SUPPORT OF THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSTITUTIONAL CLAIMS

TONY WEST
Assistant Attorney General, Civil Division
ANN M. RAVEL
Deputy Assistant Attorney General
TIMOTHY P. GARREN
Director, Torts Branch
ANDREA W. McCARTHY
Senior Trial Counsel
ZACHARY C. RICHTER
(Texas Bar # 24041773, under LCvR 83.2(e))
PAUL E. WERNER
(MD Bar, under LCvR 83.2(e))
Trial Attorneys
UNITED STATES DEPARTMENT OF JUSTICE
Torts Branch, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, D.C.  20044
(202) 616-4152 (phone)
(202) 616-4314 (fax)

Attorneys for the United States and the
Individual Named Defendants

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -i-

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

I.   SECTION 2241(e)(2) REMOVES JURISDICTION OVER
     PLAINTIFFS' CLAIMS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II.  SPECIAL FACTORS COUNSEL AGAINST THE COURT INFERRING A
      REMEDY HERE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

III. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.. . . . . . . . . . . . . . . . . . -13-

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-

## TABLE OF AUTHORITIES

### CASES

*3d Global Solutions, Inc. v. MVM, Inc.*,
    552 F. Supp. 2d 1 (D.D.C. 2008). ..................................................................... 22

*Abdullahi v. Pfizer*,
    562 F.3d 163 (2d Cir. 2009). ........................................................................... 24

\* *Al-Adahi v. Obama*,
    596 F. Supp. 2d 111 (D.D.C. 2009). ......................................................... passim

*Alaska Airlines, Inc. v. Brock*,
    480 U.S. 678 (1987). ...................................................................................... 3, 4

\* *Arar v. Ashcroft*,
    (No. 06-4216) 2009 WL 3522887 (2d Cir. Nov. 2, 2009). ....................... 4, 6, 9

\* *Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009). ............................................................................ passim

*Atl. States Legal Found. v. EPA*,
    325 F.3d 281 (D.C. Cir. 2003). ......................................................................... 13

*Ayotte v. Planned Parenthood of N. New Eng.*,
    546 U.S. 320 (2006). ........................................................................................... 3

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007). ...................................................................................... 20

*Bell v. Wolfish*,
    441 U.S. 520 (1979). .......................................................................................... 21

*Bismullah v. Gates*,
    551 F.3d 1068 (D.C. Cir. 2009). ......................................................................... 3

*Bosely v. Lemmon*,
    287 F. App'x 273 (4th Cir. 2008). ..................................................................... 19

\* *Boumediene v. Bush*,
    128 S. Ct. 2229 (2008). ............................................................................ passim

*Brown v. Mississippi,*
    297 U.S. 278 (1936)............................................................................................ 15

*Bush v. Lucas,*
    462 U.S. 367 (1983)............................................................................................ 5

*Corr. Servs. Corp. v. Malesko,*
    534 U.S. 61 (2001)............................................................................................ 4, 5

*Cuban Am. Bar Assoc'n, Inc. v. Christopher,*
    43 F.3d 1412 (11th Cir. 1995). ........................................................................ 17

*Cuoco v. Moritsugu,*
    222 F.3d 99 (2d Cir. 2000)................................................................................ 24

*Davis v. Grant Park Nursing Home LP,*
    639 F. Supp. 2d 60 (D.D.C. 2009). .................................................................. 20

*Davis v. Scherer,*
    468 U.S. 183 (1984)...................................................................................... 18, 24

*Dep't of Navy v. Egan,*
    484 U.S. 518 (1988)............................................................................................ 8

*District Council 47 v. Bradley,*
    795 F.2d 310 (3d Cir. 1986)............................................................................. 20

*El-Shifa Pharm. Indust. Co. v. United States,*
    378 F.3d 1346 (Fed. Cir. 2004)........................................................................ 15

*In re Estate of Marcos Human Rights Litig.,*
    910 F. Supp. 1460 (D. Haw. 1995). ............................................................ 15, 16

*In re Guantanamo Bay Detainee Litig.,*
    577 F. Supp. 2d 312 (D.D.C. 2008). ................................................................. 2

*Haig v. Agee,*
    453 U.S. 280 (1981)............................................................................................ 8

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982).......................................................................................... 16

*Hope v. Pelzer,*
    536 U.S. 730 (2002).......................................................................................... 17

*Hutchins v. District of Columbia*,
  188 F.3d 531 (D.C. Cir. 1999). ....................................................................... 24

*Int'l Action Ctr. v. United States*,
  365 F.3d 20 (D.C. Cir. 2004). ........................................................................ 20

*In re Iraq & Afg. Detainees Litig.*,
  479 F. Supp. 2d 85 (D.D.C. 2007). ................................................................ 10

*Johnson v. Eisentrager*,
  339 U.S. 763 (1950). ...................................................................................... 17

*Kartseva v. Dep't of State*,
  37 F.3d 1524 (D.C. Cir. 1994). ...................................................................... 20

*Kiyemba v. Obama*,
  77 U.S.L.W. 3577, 2009 WL 934097 (U.S. Apr. 3, 2009) (No. 08-1234). ..................... 13

\* *Kiyemba v. Obama*,
  555 F.3d 1022 (D.C. Cir. 2009), *cert. granted on other grounds*,
  2009 WL 935637 (U.S. Oct. 20, 2009) (No. 08-1234). ........................................... passim

*Kiyemba v. Obama*,
  561 F.3d 509 (D.C. Cir. 2009). ........................................................................ 2

*Mathie IV v. Goord*,
  267 F. App'x 13, 14 (2d Cir. 2008). ................................................................. 4

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985). ...................................................................................... passim

*Neb. Beef, Ltd. v. Greening*,
  398 F.3d 1080 (8th Cir. 2005). ........................................................................ 7

*Padilla v. Yoo*,
  633 F. Supp. 2d 1005 (N.D. Cal. 2009). ......................................................... 19

*Pearson v. Callahan*,
  129 S. Ct. 808 (2009). .................................................................................... 14

*Pullium v. Ceresini*,
  221 F. Supp. 2d 600 (D. Md. 2002). ............................................................... 20

-iii-

*Ralpho v. Bell*,
  569 F.2d 607 (D.C. Cir. 1977). .................................................................................... 15

* *Rasul v. Myers*,
  563 F.3d 527 (D.C. Cir. 2009), *petition for cert. filed*, 78 U.S.L.W.
  3099 (Aug. 24, 2009) (No. 09-227). ........................................................................ passim

*Regan v. Time, Inc.*,
  468 U.S. 641 (1984). ..................................................................................................... 2

*Robbins v. Oklahoma*,
  519 F.3d 1242 (10th Cir. 2008). ......................................................................... 19, 21

* *Sanchez-Espinoza v. Reagan*,
  770 F.2d 202 (D.C. Cir. 1985). ............................................................................. 7, 8

*Saucier v. Katz*,
  533 U.S. 194 (2001), cited by Pls.' Opp'n at 52 n. ....................................................... 9

*Schneider v. Kissinger*,
  412 F.3d 190 (D.C. Cir. 2005). ................................................................................... 8

* *Schweiker v. Chilicky*,
  487 U.S. 412 (1988). ............................................................................................. passim

*Serv. Employees Int'l Union, Local 82 v. D.C. Gov't*,
  608 F. Supp. 1434 (D.D.C. 1985). ............................................................................... 4

*Spagnola v. Mathis*,
  859 F.2d 223 (D.C. Cir. 1988). ................................................................................. 11

*United States v. Karake*,
  443 F. Supp. 2d 8 (D.D.C. 2006). ............................................................................. 15

*United States v. Stanley*,
  483 U.S. 669 (1987). .......................................................................................... 11, 12

*United States v. Verdugo-Urquidez*,
  494 U.S. 259 (1990). .......................................................................................... 15, 17

*Wilkie v. Robbins*,
  551 U.S. 537 (2007). ............................................................................................ 5, 11

*Willson v. Cagle*,
  711 F. Supp. 1521 (N.D. Cal. 1988). ........................................................................... 9

*Wilson v. Layne*,
    526 U.S. 603 (1999). ..................................................... 18

*Wilson v. Libby*,
    535 F.3d 697 (D.C. Cir. 2008). .................................... 10

*Zadvydas v. Davis*,
    533 U.S. 678 (2001). ................................................... 17

## STATUTES

10 U.S.C. § 1089.................................................................. 24

* 28 U.S.C. § 2241(e)(2)........................................................passim

## LEGISLATIVE HISTORY

152 Cong. Rec. S10,403. .................................................... 3

**<u>INTRODUCTION</u>**

In their opening brief, the Individual Defendants demonstrated that Plaintiffs' *Bivens* claims are barred by the Military Commissions Act of 2006 (MCA), that four special factors counsel against this Court inferring a remedy here, and that Defendants are in any event entitled to qualified immunity.  That is true because under binding D.C. Circuit precedent, Plaintiffs' decedents do not have the rights Plaintiffs invoke, such rights could not have been clearly established during decedents' detention, and Plaintiffs fail to allege any Defendants personally participated in any clearly established constitutional violations.

In their Opposition, Plaintiffs fail adequately to grapple with *any* of these reasons for dismissal.  Plaintiffs cite no cases holding that *Boumediene v. Bush*, 128 S. Ct. 2229 (2008), invalidated the portion of the MCA that bars the exact claims Plaintiffs bring here.  In addition, Plaintiffs do not deny that the D.C. Circuit recently dismissed claims nearly identical to Plaintiffs' claims on both special factors and qualified immunity grounds.  Nor do Plaintiffs deny that under governing D.C. Circuit precedent, aliens detained in Guantánamo do not have rights under the Fifth or Eighth Amendments.  These facts lead to the inevitable conclusion that Plaintiffs' claims must be dismissed.

**I.      SECTION 2241(e)(2) REMOVES JURISDICTION OVER PLAINTIFFS' CLAIMS.**

Section 2241(e)(2) of Title 28 bars Plaintiffs' constitutional claims here.  Under § 2241(e)(2), "no court" has jurisdiction to hear an action against the United States or its agents "relating to any aspect" of an alien's detention as an enemy combatant.  As we explained in our opening brief, the United States properly detained decedents—who are aliens—as enemy combatants, and *Boumediene* left § 2241(e)(2) intact.  Ind. Defs.' Mem. at 3-4.  This section

therefore bars Plaintiffs' claims.

Plaintiffs' response that *Boumediene* struck down MCA § 7 in its entirety has been rejected not only by judges of this Court, but also by the D.C. Circuit.  As the D.C. Circuit has explicitly stated, *Boumediene* "referred to § 7 without specifying a particular subsection of § 2241(e) but its discussion of the Suspension Clause *clearly indicates* it was referring only to that part of § 7 codified at § 2241(e)(1)." *Kiyemba v. Obama*, 561 F.3d 509, 512 n.1 (D.C. Cir. 2009) (emphasis added).[1]  In other words, according to the D.C. Circuit, *Boumediene* had no effect on § 2241(e)(2).  Indeed, Plaintiffs do not cite a single case that supports their proposition that *Boumediene* struck down § 2241(e)(2).  To the contrary, judges of this Court have routinely upheld this section.  *See, e.g.*, *Al-Adahi v. Obama*, 596 F. Supp. 2d 111, 117-120 (D.D.C. 2009) (upholding § 2241(e)(2) and citing supportive cases).

Plaintiffs' other argument—that § 2241(e)(2) is not severable from § 2241(e)(1) and therefore must be invalid—has also been explicitly rejected by numerous judges in this district. *See, e.g.*, *In re Guantanamo Bay Detainee Litig.*, 577 F. Supp. 2d 312, 314 (D.D.C. 2008).[2]  As the Court has stated, there is a presumption in favor of severability.  *See Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984).  Contrary to Plaintiffs' assertion, Pls.' Opp'n at 5, the relevant inquiry is not whether § 2241(e)(2) would remain fully operative as a law without § 2241(e)(1).  Rather, the proper question is whether the legislature would have preferred what is left of the statute to no

---

[1]Plaintiffs' characterization of the D.C. Circuit's understanding of *Boumediene* as *dicta* in no way impacts the correctness of the court's understanding, or the forcefulness with which the court conveyed that understanding.

[2]Plaintiffs' observation that the detainees in this and other cases did not challenge the constitutionality of the MCA is irrelevant to the severability question.

statute at all.  *See Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 330 (2006).

Accordingly, in arguing that § 2241(e)(2) is not severable, Plaintiffs effectively contend that

Congress would have preferred no bar to any claims by Guantánamo detainees over a bar on

claims regarding their detention, transfer, treatment, trial, and conditions of confinement where

detainees have a right to habeas.  The legislative history of the MCA shows this assertion lacks

merit.  *See, e.g.*, 152 Cong. Rec. S10,403 (daily ed. Sept. 28, 2006) (statement of Sen. Cornyn)

(in discussing § 2241(e)(2), stating that "[w]e do not want those who were properly detained as

enemy combatants to be able to sue the U.S. military.").

    And Plaintiffs cite no cases holding that a right to habeas includes a right to bring

conditions of confinement claims, which according to Plaintiffs would prevent § 2241(e)(2) from

functioning as Congress intended.  Even assuming, *arguendo*, that habeas does include such a

right, § 2241(e)(2) would still function as Congress intended to the extent it bars damages claims

against the U.S. military, which certainly cannot be brought under habeas.  *See* 152 Cong. Rec.

S10,403 (daily ed. Sept. 28, 2006) (statement of Sen. Cornyn) (in discussing § 2241(e)(2), stating

that the U.S. military "should not be punished with litigation" for detaining an alien who is later

released).  Therefore, that argument lacks merit as well.

    Plaintiffs' observation that some draft versions of the MCA contained a severability

clause which Congress ultimately did not include in the final bill has no bearing on the

severability question.  Absence of a severability clause "does not raise a presumption against

severability."  *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987); *see also Bismullah v.

Gates*, 551 F.3d 1068, 1073 (D.C. Cir. 2009) ("[C]ongressional silence tells us nothing about the

Congress's intent regarding severability." (citing *Alaska Airlines*, 480 U.S. at 686)).  Nor does

the removal of a severability clause from a draft bill indicate that the final bill is not severable. *See Al-Adahi*, 596 F. Supp. 2d at 120 n.9.  In fact, in *Al-Adahi*, this Court rejected the exact argument Plaintiffs make here after following the admonitions of *Alaska Airlines* and *Bismullah*. *Id.*  Given the presumption in favor of severability and Congress's clear intent to prevent detainee suits for aspects of detention, this Court should follow the other decisions that have upheld § 2241(e)(2) after *Boumediene*, uphold that provision, and dismiss Plaintiffs' claims for lack of subject matter jurisdiction.

Faced with the continued vitality of § 2241(e)(2), Plaintiffs improperly challenge its constitutionality.  A *Bivens* suit is not the proper vehicle to challenge the constitutionality of a federal statute.  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70-71 (2001) (noting that *Bivens* was intended not to deter the conduct of policymaking entities, but rather to deter the unconstitutional conduct of individual officers); *cf. Arar v. Ashcroft*, No. 06-4216, 2009 WL 3522887, at *11 (2d Cir. Nov. 2, 2009) (en banc) ("Our federal system of checks and balances provides means to consider allegedly unconstitutional executive policy, but a private action for money damages against individual policymakers is not one of them.").

Additionally, Plaintiffs have not challenged the MCA in their Amended Complaint, nor do they seek declaratory or injunctive relief from this Court against application of the MCA. Therefore, their constitutional challenge is not properly before this Court.  *See Mathie IV v. Goord*, 267 F. App'x 13, 14 (2d Cir. 2008) (ignoring constitutional challenge plaintiff raised for the first time in opposition to motion to dismiss because amended complaint did not include challenge); *cf. Serv. Employees Int'l Union, Local 82 v. D.C. Gov't*, 608 F. Supp. 1434, 1436 n.2 (D.D.C. 1985) (ignoring constitutional challenges to certain regulations raised for the first time in

opposition brief in part because challenges were not mentioned in plaintiff's complaint).

Accordingly, if Plaintiffs wish to challenge the constitutionality of the MCA, they should file a

new cause of action under the Administrative Procedure Act.

Even if Plaintiffs could present a constitutional challenge to the MCA in this action, it

cannot logically be argued that § 2241(e)(2) is unconstitutional to the extent it bars a *Bivens*

remedy for the simple reason that it is universally recognized that there is no constitutional right

to such a remedy.  As the Supreme Court recently explained in *Wilkie v. Robbins*, 551 U.S. 537,

550 (2007), the *Bivens* remedy "is not an automatic entitlement no matter what other means there

may be to vindicate a protected interest, and in most instances we have found a *Bivens* remedy

unjustified."  *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because implied causes

of action are disfavored, the Court has been reluctant to extend *Bivens* liability."); *Malesko*, 534

U.S. at 68 ("Since *Carlson*, we have consistently refused to extend *Bivens* liability to any new

context or new category of defendants.").

Congress may bar a *Bivens* remedy whenever it deems appropriate, even without an

explicit preclusion such as exists in § 2241(e)(2).  *See Schweiker v. Chilicky*, 487 U.S. 412, 421-

23 (1988) ("The absence of statutory relief for a constitutional violation . . . does not by any

means necessarily imply that courts should award money damages against the officers

responsible for the violation. . . . When the design of a Government program suggests . . .

remedial mechanisms for constitutional violations that may occur in the course of its

administration, we have not created additional *Bivens* remedies."); *Bush v. Lucas*, 462 U.S. 367,

378 (1983) ("When Congress provides an alternative remedy, it may, of course, indicate its

intent, by statutory language, by clear legislative history, or perhaps even by the statutory remedy

itself, that the Court's power should not be exercised.").  Accordingly, Plaintiffs' proposed

constitutional challenge to § 2241(e)(2) is wholly illogical in this context.[3]

## II.      SPECIAL FACTORS COUNSEL AGAINST THE COURT INFERRING A REMEDY HERE.

Independent of the MCA, no less than four special factors counsel against this Court

inferring a new damages remedy for Plaintiffs.  Here, Plaintiffs' claims (1) involve the weighing

and appraising of numerous broad policy considerations; (2) involve areas constitutionally

committed to the political branches; (3) could have a detrimental impact on the effectiveness of

the military; and (4) involve an area that has already received careful attention from Congress.

And as the Second Circuit recently noted, in a special factors analysis "[t]he only relevant

threshold—that a factor 'counsels hesitation'—is remarkably low."  *Arar*, 2009 WL 3522887, at

*10.  Given the above special factors, this Court should not infer a remedy here.

Indeed, the D.C. Circuit recently dismissed nearly identical *Bivens* claims by former

Guantánamo detainees against many of the Defendants named here on special factors grounds.

*See Rasul v. Myers*, 563 F.3d 527, 532 n.5 (D.C. Cir. 2009) (*per curiam*), *petition for cert. filed*,

78 U.S.L.W. 3099 (Aug. 24, 2009) (No. 09-227).  Dismissal here is all the more appropriate

given the Supreme Court's recent guidance that inferring new *Bivens* remedies—as Plaintiffs ask

---

[3]Aside from the fact that the MCA is constitutional and Plaintiffs have failed to properly challenge it, this Court need not decide on the constitutionality question to resolve this case. Instead, the Court may resolve Plaintiffs' claims on special factors and qualified immunity grounds alone.  *See Schweiker*, 487 U.S. at 429 n.3 (resolving claim on special factors grounds without deciding whether statute precludes jurisdiction).  If, however, this Court determines it should reach the constitutionality of the MCA, Defendants respectfully request that the United States be given the opportunity to provide further briefing on that issue.

this Court to do—is disfavored. *Iqbal*, 129 S. Ct. at 1948.[4]

Although Plaintiffs argue otherwise, their claims clearly involve weighing broad policy considerations.  Moreover, Plaintiffs ignore D.C. Circuit precedent.  The D.C. Circuit in *Rasul* resoundingly rejected Plaintiffs' argument that *Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985), is distinguishable from this case.[5]  *Rasul* involved a *Bivens* action by former Guantánamo detainees against high-level military officials for alleged violations of the detainees' Fifth and Eighth Amendment rights—the same claims Plaintiffs bring here.  In discussing whether to infer a remedy, the court found "no basis for distinguishing [*Rasul*] from *Sanchez-Espinoza*."  *Rasul*, 563 F.3d at 532 n.5.  Therefore, the court continued, special factors foreclosed the detainees' claims.  *Id.  Rasul*'s holding applies equally here.

Even absent this Circuit's holding in *Rasul*, Plaintiffs miss the mark when they argue that inferring a damages remedy for AUMF detainees against military officials would not cause embarrassment to our government abroad because Guantánamo is not really abroad.  Pls.' Opp'n at 52.  It cannot be seriously contended that Guantánamo is devoid of foreign policy and national security implications.  Indeed, Plaintiffs do not deny that the United States detained decedents as part of its foreign policy and out of national security considerations, that other countries aided in capturing and detaining decedents, that decedents and other detainees were citizens of other countries, and that the detention, treatment, and potential release of the detainees is a topic of

---

[4]Indeed, the Eighth Circuit has stated there is a "presumption against judicial recognition of direct actions for violations of the Constitution by federal officials."  *Neb. Beef, Ltd. v. Greening*, 398 F.3d 1080, 1084 (8th Cir. 2005) (internal quotation marks omitted).

[5]Oddly, Plaintiffs omit *Rasul* from their response, instead claiming that their response need only be "brief" because Defendants' showing relied "*almost* entirely" on *Sanchez-Espinoza*.  Pls.' Opp'n at 52 (emphasis added).

broad international concern.  Accordingly, Plaintiffs' claims implicate foreign policy and national

security considerations.  Under *Sanchez-Espinoza*, where such profound considerations are

present, courts should "leave to Congress the judgment whether a damage remedy should exist."

*Sanchez-Espinoza*, 770 F.2d at 209.[6]

Plaintiffs fail to counter Defendants' showing that foreign policy and national security

considerations are constitutionally committed to the political branches and that Congress should

therefore determine whether to create a remedy.  Plaintiffs' assertions that this showing is

somehow "an *apologia*" for torture, and that the United States is a signatory to the U.N. Torture

Convention, which forbids torture, Pls.' Opp'n at 52-53, highlight Plaintiffs' misunderstanding

of a special factors analysis.  As Defendants explained in their opening brief, a special factors

analysis focuses not on the merits of a remedy or the appropriateness of decisions made by

coordinate branches of government, but rather on *who should decide* whether to provide a

remedy.  Ind. Defs.' Mem. at 7-8 (quoting *Bush*, 462 U.S. at 380).  Here, Congress should make

that decision.

The Second Circuit in a recent en banc decision refused to infer a *Bivens* remedy for a

dual Canadian and Syrian citizen allegedly rendered by the United States from a United States

airport to Syria to be tortured.  The Second Circuit reasoned that decisions to render suspected

_____

[6]Moreover, even outside the context of implied *Bivens* actions, the courts have recognized
that "[m]atters intimately related to foreign policy and national security are rarely proper subjects
for judicial intervention."  *Haig v. Agee*, 453 U.S. 280, 292 (1981).  *See also Dep't of Navy v.
Egan*, 484 U.S. 518, 530 (1988) ("[U]nless Congress specifically has provided otherwise, courts
traditionally have been reluctant to intrude upon the authority of the Executive in military and
national security affairs."); *Schneider v. Kissinger*, 412 F.3d 190, 197 (D.C. Cir. 2005) ("To
determine whether drastic measures should be taken in matters of foreign policy and national
security is not the stuff of adjudication, but of policymaking.").

terrorists to foreign nations involve myriad foreign affairs and national security considerations.

*See Arar*, 2009 WL 3522887, at *11-13, 16-17.  Accordingly, "Congress is the appropriate

branch of government to decide under what circumstances (if any) these kinds of policy

decisions—which are directly related to the security of the population and the foreign affairs of

the country—should be subjected to the influence of litigation brought by aliens." *Id.* at *17.

Similarly, the detention and interrogation of decedents and other AUMF detainees at

Guantánamo in the midst of an ongoing armed conflict involved numerous foreign policy and

national security considerations.  As in *Arar*, Congress is the body most competent to fashion a

remedy here.

Nor do Plaintiffs adequately address Defendants' showing that inferring a damages

remedy here would have an adverse effect on the military.  Instead, Plaintiffs simply assert that

recognizing a *Bivens* remedy will not harm military decision-making and discipline in the same

way as suits by enlisted soldiers against superiors—suits the Court has repeatedly rejected

because of special factors.  Pls.' Opp'n at 51-52.  Plaintiffs' only support for this assertion,

*Willson v. Cagle*, 711 F. Supp. 1521 (N.D. Cal. 1988), is not binding authority and in any event

is easily distinguishable.  In *Willson*, a Navy-operated train in California struck civilian

protestors, and the court allowed a *Bivens* claim.  *Id.* at 1526.  *Willson*, however, did not involve

the issue present here: the actions of military officers abroad in their efforts to prevent future

terrorist attacks against the United States during an ongoing armed conflict.[7]

Plaintiffs also ignore several other special factors counseling against extending *Bivens* to

---

[7] *Saucier v. Katz*, 533 U.S. 194 (2001), cited by Pls.' Opp'n at 52 n.43, is similarly
irrelevant because it involved the arrest of a civilian demonstrator by military police during a
public event in California, and did not involve foreign policy or national security implications.

this new context.  Specifically, Plaintiffs fail to dispute that discovery could reveal sensitive

military information which would aid future terrorists; that discovery could disrupt ongoing

military operations by wresting officials from the battlefield to answer discovery inquiries; and

that opening the courts to damages suits during an ongoing armed conflict would allow "enemies

to use our own federal courts" to hamper the military's efforts.  Ind. Defs.' Mem. at 13-14

(quoting *In re Iraq & Afg. Detainees Litig.*, 479 F. Supp. 2d 85, 105 (D.D.C. 2007)); *see also*

*Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008) ("[I]f we were to create a *Bivens* remedy, the

litigation of the allegations in the amended complaint would inevitably require judicial intrusion

into matters of national security and sensitive intelligence information.").[8]  These concerns were

amply discussed by this Court when it dismissed on special factors grounds a *Bivens* suit by

detainees in Afghanistan and Iraq against military officials.  *See In re Iraq*, 479 F. Supp. 2d at

105.  Plaintiffs fail even to cite *In re Iraq* in this portion of their Opposition, let alone wrestle

with the reasons it presents for dismissal.

Plaintiffs even ignore the implication of congressional attention to the situation of

Guantánamo detainees without offering them a remedy.  Defendants demonstrated that frequent

and intense congressional attention to an issue indicates that judicial intervention in that area is

inappropriate, particularly when Congress has not offered plaintiffs the remedy they seek.  Ind.

Defs.' Mem. at 14-15 (discussing *Schweiker*, 487 U.S. at 421-29).  Congress has addressed the

treatment of military detainees three times in three years and has not offered detainees the

remedy Plaintiffs pursue.  Ind. Defs' Mem. at 15-16.  This shows that Congress had the

---

[8]Furthermore, Plaintiffs' observation that United States soldiers voluntarily enter the
military does not affect the paradox of offering our enemies a remedy courts deny our soldiers.

opportunity—indeed, three opportunities—to provide detainees with a damages remedy, and chose not to do so.  In fact, in the MCA, Congress specifically *limited* private causes of action against military officers.  28 U.S.C. § 2241(e)(2).  If anything, through the MCA, Congress "plainly expressed an intention" that courts *not* allow *Bivens* remedies for detainees.  *See Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C. Cir. 1988).  Courts should not infer a *Bivens* remedy against the obvious intent of Congress.  Plaintiffs' argument that the MCA is unconstitutional has no bearing on Congress's intent and is irrelevant to this special factors analysis.[9]  Accordingly, it cannot be said that Congress "inadvertently" omitted damages remedies for detainees.  *Id.*

In response, Plaintiffs argue that in *Schweiker* and *United States v. Stanley*, 483 U.S. 669 (1987), Congress had already created a remedies scheme.  But as the Court explained in *Schweiker*, Congress's failure to provide a remedy for a constitutional violation was not an invitation for courts to do so: "The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."  487 U.S. at 421; *see also Wilkie*, 551 U.S. at 550 ("[E]ven in the absence of an alternative [statutory scheme], a *Bivens* remedy is a subject of judgment.");

---

[9]Plaintiffs' attempt to explain Congress's failure to afford Guantánamo detainees with any type of constitutional tort remedy on the ground that Congress "wrongly believed" that the detainees had no constitutional rights when it passed the MCA, Pls.' Opp'n at 54, amounts to a concession that Defendants would at least be entitled to dismissal under the qualified immunity doctrine.  As explained in the following section at page 16, Defendants are entitled to dismissal on qualified immunity grounds except to the extent they violated decedents' clearly established rights.  Congress's failure to recognize that Guantánamo detainees were entitled to constitutional protections at the time of the adoption of the MCA could only have been due to the fact that it was not clearly established in the case law at that time that such protections extended to aliens detained at Guantánamo.

*Stanley*, 483 U.S. at 683 ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [plaintiff] . . . an 'adequate' federal remedy for injuries."). As discussed above, Congress has given close, repeated attention to Guantánamo detainees and has *not* created a damages remedy scheme for them. Plaintiffs' argument that special factors do not counsel hesitation here *because* Congress has failed to provide adequate remedies for Plaintiffs turns this special factor on its head and runs directly counter to Supreme Court precedent. Congress's failure to provide Plaintiffs with damages remedies—despite Congress's attention to the situation of detainees—is *precisely* the reason why this Court should not provide such remedies.

Plaintiffs claim that the Reagan Act and the McCain Amendment are "irrelevant." Pls.' Opp'n at 53. But the Reagan Act and the McCain Amendment are relevant because they show Congress addressed the treatment of detainees yet deliberately decided to not provide a damages remedy. Plaintiffs even quote Senator McCain's statement that the Amendment he sponsored does not create a private right of action, as if this somehow supports Plaintiffs' position. Pls.' Opp'n at 53. To the contrary, Senator McCain's statement, and the absence of a private right of action in the Reagan Act or the McCain Amendment, clearly demonstrate that Congress considered but opted against affording detainees such a right of action.

The above special factors arguments are buttressed by the fact that, as the Supreme Court recently stated, implied causes of action like *Bivens* are "disfavored." *Iqbal*, 129 S. Ct. at 1948. The Court has "been reluctant to extend *Bivens* liability 'to any new context or new category of defendants.'" *Id.* (quoting *Malesko*, 534 U.S. at 68). Plaintiffs do not deny that inferring a remedy here would extend such liability to a new context or new category of defendants. And

-12-

Plaintiffs' attempt to distinguish the long line of cases showing the Court's consistent refusal to extend *Bivens* has no bearing on Defendants' underlying argument: the Supreme Court has for nearly thirty years refused to extend *Bivens* liability to new contexts; Plaintiffs ask this Court to extend such liability into a new context; therefore, this Court should deny Plaintiffs' invitation and should leave it to Congress to create a remedy here.

## III.   DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Even without any special factors counseling hesitation, Plaintiffs' constitutional claims still fail because Defendants are entitled to qualified immunity.  Under governing D.C. Circuit precedent, Plaintiffs' decedents do not have the constitutional rights Plaintiffs invoke, and in any event those rights were not clearly established during decedents' detention.  *See Kiyemba v. Obama*, 555 F.3d 1022, 1026 (D.C. Cir. 2009), *cert. granted on other grounds*, 2009 WL 935637 (U.S. Oct. 20, 2009) (No. 08-1234).[10]  As the court held in *Kiyemba*, aliens detained in Guantánamo do not have constitutional rights beyond habeas.  *Id.* at 1032.  Additionally,

_____

[10]Defendants rely on *Kiyemba*'s holding that aliens detained in Guantánamo have no constitutional rights other than the right to habeas.  The Supreme Court granted certiorari in *Kiyemba* to answer whether a federal court exercising habeas jurisdiction has the power to order the Executive to release a prisoner held in Guantánamo into the continental United States.  *See* Petition for Writ of Certiorari, *Kiyemba v. Obama*, 77 U.S.L.W. 3577, 2009 WL 934097 (U.S. Apr. 3, 2009) (No. 08-1234).  Notably, the question presented is not whether aliens detained at Guantánamo have rights under the Fifth or Eighth Amendments, which Plaintiffs invoke here.  Accordingly, the Supreme Court need not reach that issue in *Kiyemba*.  Also of note, the Supreme Court did not vacate the D.C. Circuit decision in *Kiyemba*, and that decision remains binding.  *Cf. Atl. States Legal Found. v. EPA*, 325 F.3d 281, 285 (D.C. Cir. 2003) (citing D.C. Circuit case as support for proposition despite grant of certiorari in cited case).  Regardless, the Court's ultimate decision in *Kiyemba* cannot affect Defendants' entitlement to qualified immunity here because even if the Court decides Guantánamo detainees have constitutional rights beyond habeas, those rights could not have been clearly established three years ago.  *See Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985) ("[O]fficials performing discretionary functions are not subject to suit when such questions are resolved against them only *after* they have acted.") (emphasis added).

Plaintiffs have failed to allege Defendants personally participated in clearly established constitutional violations.

Defendants urge the Court to follow the guidance of *Pearson v. Callahan*, 129 S. Ct. 808 (2009), and proceed directly to the clearly established analysis.  Plaintiffs' argument that this Court should follow the rigid *Saucier* model ignores the reasons against following that approach—namely, that a constitutional ruling would have no bearing on the ultimate outcome of this litigation because the clearly established prong is "rather quickly and easily decide[d]."  *Id.* at 820.  Indeed, the D.C. Circuit in *Rasul* skipped directly to the clearly established prong of the qualified immunity analysis in granting immunity to high-level military officials in a *Bivens* suit nearly identical to that of Plaintiffs.  *Rasul*, 563 F.3d at 530 (quoting *Pearson*, 129 S. Ct. at 820). Regardless of the approach adopted by this Court, Defendants are entitled to qualified immunity.

As a threshold matter, Plaintiffs fail to cite a single case indicating that detainees have Eighth Amendment rights prior to conviction.  Instead, Plaintiffs assert that treatment that would violate the Eighth Amendment rights of a convicted prisoner also violates the Fifth Amendment rights of one in government custody.  Pls.' Opp'n at 28-29.  Accordingly, Plaintiffs have effectively conceded that their Eighth Amendment claim has no merit.

Their Fifth Amendment claim is equally meritless.  As mentioned above, this Court is bound by the D.C. Circuit's decision in *Kiyemba v. Obama*.  There, the court repeatedly noted that aliens detained in Guantánamo do not have constitutional rights under the Fifth Amendment. *Kiyemba*, 555 F.3d at 1026 & n.9, 1032.  Plaintiffs' argument that *Kiyemba* was wrongly decided by the D.C. Circuit is of no moment because the authority remains binding precedent (and requires dismissal of this lawsuit on qualified immunity grounds, even were that decision

eventually overturned, *see infra* p. 18).  Similarly, Plaintiffs' effort to apply to the Fifth

Amendment the functional test that the Court in *Boumediene* applied to habeas ignores the

*Boumediene* Court's own admonition and D.C. Circuit precedent.  *See Boumediene*, 128 S. Ct. at

2277 ("It bears repeating that our opinion does not address the content of the law that governs

[Guantánamo detainees'] detention.  That is a matter yet to be determined."); *see also Kiyemba*,

555 F.3d at 1032.

Apart from *Kiyemba*'s resolution of whether detainees have due process rights, the prior

cases Plaintiffs cite as establishing decedents' due process rights are easily distinguishable.  *See*

*United States v. Verdugo-Urquidez*, 494 U.S. 259, 278 (1990) (criminal defendants have due

process rights during trials in United States courts, regardless of nationality) (Kennedy, J.,

concurring); *Brown v. Mississippi*, 297 U.S. 278 (1936) (United States citizen detained in the

United States has due process rights); *El-Shifa Pharm. Indus. Co. v. United States*, 378 F.3d

1346, 1352 (Fed. Cir. 2004) (Takings Clause claim resolved on political question grounds);

*Ralpho v. Bell*, 569 F.2d 607, 619 (D.C. Cir. 1977) (residents of Micronesia, at the time

effectively a U.S. territory whose residents court refers to as "American subjects," have due

process rights); *United States v. Karake*, 443 F. Supp. 2d 8 (D.D.C. 2006) (alien criminal

defendants have due process rights during trial in United States court).

Similarly, the cases Plaintiffs cite purporting to show that the actions alleged violated the

Fifth and Eighth Amendments are of no moment because almost all of those cases involved

United States citizens who were detained within the United States.  *See* Pls.' Opp'n at 30 (listing

cases).  The only case involving foreigners, *In re Estate of Marcos Human Rights Litigation*, 910

F. Supp. 1460 (D. Haw. 1995), concerned claims under the Alien Tort Statute and the Torture

Victim Protection Act and did not consider the applicability of the Fifth or Eighth Amendments to the treatment of aliens abroad.  *See id.* at 1469.  Accordingly, those cases do not establish decedents' constitutional rights.

Even absent *Kiyemba*, Plaintiffs' constitutional rights could not have been clearly established during their detention from 2001 until 2006.  As the Supreme Court stated two years *after* the relevant time frame, "before today the Court has *never held* that noncitizens detained by our Government in territory over which another country maintains *de jure* sovereignty have *any rights* under our Constitution."  *Boumediene*, 128 S. Ct. at 2262 (emphases added).  The "historical line of precedent," Pls.' Opp'n at 31, that formed the basis of the Courts' novel recognition in 2008 that the Suspension Clause applies to Guantánamo detainees has no effect on how clearly established any other potential rights could have been.  *See Mitchell*, 472 U.S. at 535.

Indeed, Plaintiffs all but conceded that decedents' constitutional rights were not clearly established during the relevant period when Plaintiffs wrote that Congress in 2006 "wrongly believed" that Guantánamo detainees had no constitutional rights.  Pls.' Opp'n at 54.  If, as Plaintiffs assert, the Legislative Branch of government was mistaken about the existence of constitutional rights for such detainees, then certainly a "reasonable person" cannot be expected to have known of such rights.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  As Plaintiffs' own citations to the legislative history of the MCA demonstrate, government officials in 2006 did not believe detainees had any constitutional rights, in large part based on legal precedent.  *See* Pls.' Opp'n at 6 & n.5 (citing statements of Senator Sessions that detainees have no constitutional rights).

Plaintiffs' argument that Defendants were "on notice of the illegality" of their conduct, Pls.' Opp'n at 30, misstates the proper inquiry for a clearly established analysis.  General illegality is not the required inquiry for qualified immunity purposes.  As the Court stated in *Hope v. Pelzer*, 536 U.S. 730 (2002), the "salient question" a court needs to ask in determining whether alleged conduct violated clearly established rights is whether "the state of the law" at the time of the conduct gave the defendants "fair warning" that their conduct "was *unconstitutional*." *Id.* at 741 (emphasis added).  As a threshold matter, until 2004, the case law uniformly held that aliens detained outside the sovereign territory of the United States had no rights under the Fifth and Eighth Amendments.  *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Verdugo-Urquidez*, 494 U.S. at 269; *Johnson v. Eisentrager*, 339 U.S. 763, 781-85 (1950).  The Eleventh Circuit had even held that aliens detained at Guantánamo had no First or Fifth Amendment rights.  *See Cuban Am. Bar Ass'n, Inc. v. Christopher*, 43 F.3d 1412, 1428 (11th Cir. 1995).

Given this state of the law, the D.C. Circuit held in *Rasul* that the Fifth and Eighth Amendment rights of detainees held in Guantánamo from 2001 until 2004 could in no way have been clearly established.  *See Rasul*, 563 F.3d at 530.  As the court remarked, at the time of *Rasul* plaintiffs' detention, neither the Supreme Court nor the D.C. Circuit "had ever held that aliens captured on foreign soil and detained beyond sovereign U.S. territory had any constitutional rights." *Id.*  So too here.  At the time of decedents' detention from 2001 until 2006, neither the Supreme Court nor the D.C. Circuit had ever held that decedents had any constitutional rights.  Accordingly, such rights could not have been clearly established.

Even reading *Rasul* in the light most favorable to Plaintiffs, at bare minimum, the court held that Guantánamo detainees' constitutional rights were not clearly established between 2001

and 2004.  As Defendants already explained, from 2004 until 2006, the majority of district courts to address the question refused to recognize that Guantánamo detainees had any such rights.  Ind. Defs.' Mem. at 22 (citing cases).  Defendants also explained that where courts disagree, qualified immunity applies.  *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 618 (1999)).  Tellingly, Plaintiffs completely ignore this line of cases and *Wilson v. Layne* in their Opposition.

Indeed, to this day, the D.C. Circuit holds that detainees do not have Fifth Amendment rights.  *See Kiyemba*, 555 F.3d at 1026.  Detainees could not have had clearly established constitutional rights in 2006 when governing precedent in 2009 still holds that detainees lack such rights.  And as mentioned above, even if the Supreme Court determines that detainees in fact have due process rights, such a holding would not make those rights clearly established retroactively, meaning that Defendants here would still be entitled to qualified immunity.  *See Mitchell*, 472 U.S. at 535.

Because Plaintiffs cannot point to any case law that clearly establishes that Guantánamo detainees had constitutional rights from 2001 until 2006, they shift the focus to the illegality of torture under the U.N. Convention Against Torture (CAT).  Pls.' Opp'n at 32-33.  But the illegality of torture under the CAT has no bearing on whether Defendants' alleged actions were clearly *unconstitutional*.  Nor does it affect whether Plaintiffs are entitled to recovery here.  *See Davis v. Scherer*, 468 U.S. 183, 194 n.12 (1984).  As the Court remarked in *Davis*, officials' violations of statutes or regulations do not waive qualified immunity unless the statute or regulation is the basis for the plaintiff's claim: "Neither federal nor state officials lose their immunity by violating the clear command of a statute or regulation—of federal or of state law—unless that statute or regulation provides the basis for the cause of action sued upon."  *Id.*

Plaintiffs' causes of action stem from the Fifth and Eighth Amendments, not from the CAT, and that treaty is irrelevant for qualified immunity purposes.

Plaintiffs also have failed properly to allege that Defendants personally participated in any violations that were clearly established as unconstitutional.  As the Supreme Court made clear in *Ashcroft v. Iqbal*, for a claim against a high-level government official to survive a motion to dismiss on qualified immunity grounds, it must contain factual allegations plausibly demonstrating the officials' direct involvement in the violation of the plaintiff's constitutional rights.  129 S. Ct. at 1950-51.

Conclusory allegations are entitled to no weight under *Iqbal* and factual allegations that are equally consistent with proper conduct are inadequate to state a "plausible" claim.  *Id.* at 1949-50.  Moreover, the plausibility standard has "greater bite" in complex constitutional claims involving numerous defendants.  Ind. Defs.' Mem. at 24 (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)).  The cases Plaintiffs cite in response are to no avail because they involved a small number of defendants sued in their individual capacities.  *See Bosely v. Lemmon*, 287 F. App'x 273 (4th Cir. 2008) (two defendants sued in their individual capacities); *Padilla v. Yoo*, 633 F. Supp. 2d 1005 (N.D. Cal. 2009) (one defendant sued in his individual capacity), *notice of appeal filed*, No. 09-16478 (9th Cir. July 9, 2009).  Here, where Plaintiffs sue twenty-four defendants in their individual capacities, their complaint must make clear "exactly *who* is alleged to have done *what* to *whom*."  *Robbins*, 519 F.3d at 1250.

Plaintiffs argue this case should nonetheless proceed to discovery because the government controls "vital evidence"—an argument that is squarely contrary to the holding in *Iqbal*.  In support, Plaintiffs cite distinguishable, outdated, or nonbinding cases.  For example, in

*Kartseva v. Department of State*, 37 F.3d 1524 (D.C. Cir. 1994), the court allowed discovery to proceed under an Administrative Procedure Act claim against the agency, not under the *Bivens* claim against the individuals. *See id.* at 1530 n.21. Moreover, *Iqbal* rejected the approach taken in *Kartseva* when the Court refused to allow discovery to proceed against the government before it decided whether the individual defendants were entitled to qualified immunity. *See Iqbal*, 129 S. Ct. at 1953. *Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d 60 (D.D.C. 2009), involved a civil suit between private entities and did not involve a qualified immunity defense, a crucial distinction because qualified immunity is an "immunity from suit," including discovery. *Mitchell*, 472 U.S. at 526. And both *District Council 47 v. Bradley*, 795 F.2d 310 (3d Cir. 1986), and *Pullium v. Ceresini*, 221 F. Supp. 2d 600 (D. Md. 2002), preceded the Court's landmark holdings in *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), and are nonbinding.

Plaintiffs correctly note that under *Iqbal*, the factual allegations necessary to state a claim will vary depending on the constitutional violation alleged. They also correctly assert that where an individual is in government custody, Fifth and Eighth Amendment claims—when those Amendments apply—may be established by pleading factual allegations showing deliberate indifference to a serious risk of harm to the individual. Pls.' Opp'n at 39. But those observations do not diminish *Iqbal*'s requirement for factual—instead of conclusory and legal—allegations to state a claim. Even under the standard in *International Action Center v. United States*, 365 F.3d 20 (D.C. Cir. 2004), for supervisory liability in deliberate indifference cases, bare allegations that a defendant "knew," "facilitated," or "condoned" certain actions are inadequate to state a claim against an individual defendant.

Plaintiffs' lengthy effort to pinpoint where they make factual allegations against each Defendant only highlights the inadequacy of their Amended Complaint under the controlling standard.  Plaintiffs fail to rebut the showing of Defendants Pace, Carrico, Rodriguez, Tornberg, Cowan, Arthur, Burkhard, and Cullison that the complaint contains no specific allegations against them other than the conclusory allegations listed for all twenty-four defendants.  In response, for all the above Defendants except Pace and Carrico, Plaintiffs repeatedly cite allegations naming "Defendants," *see, e.g.*, Pls.' Opp'n at 42, 43, 46, 50 (citing Am. Compl. ¶¶ 61, 63, 68, 71-80, 183-197), without specifying exactly *who* did *what* to *whom*.  Such allegations—which abound in the Amended Complaint—fall far short of the standard required by Rule 8.  *See Robbins*, 519 F.3d at 1250.  Plaintiffs attempt to hold Defendant Pace liable under the classic form of *respondeat superior* liability when they state that "by virtue of" his position, he was necessarily involved in authorizing the alleged abuses of decedents.  Pls.' Opp'n at 42.  Such liability is precluded from *Bivens*, as *Iqbal* made clear.  *See* 129 S. Ct. at 1948.  Similarly, Plaintiffs attempt to hold Defendant Carrico liable for commanding Camp X-Ray, where decedent Al-Zahrani allegedly was held for several months in a cell exposed to the elements.  Pls.' Opp'n at 44.  But except in the most vague and conclusory terms, Plaintiffs fail to specify any adverse conditions or injuries that Al-Zahrani suffered by being held in such a location.  Plaintiffs certainly alleged nothing to demonstrate that Al-Zahrani was subjected to conditions clearly below the minimal standards of civilized decency imposed by the Fifth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 531 (1979).

Nor do Plaintiffs sufficiently rebut the showing by Defendants Lehnert, Hood, Harris, McQueen, Cannon, Bumgarner, and Dennis that the only specific allegations against them are

factually neutral or are based on *respondeat superior* liability.[11]  Although Plaintiffs claim many

of these Defendants were "regularly apprised" of International Committee of the Red Cross

(ICRC) findings, Pls.' Opp'n at 43, they cite a paragraph that makes no direct mention of any

Defendant.  Am. Compl. ¶ 74.  And Plaintiffs invoke *respondeat superior* liability when they

assert that Defendants Hood and Harris were "responsible for" detention and interrogations at

Guantánamo and are thereby liable.  Pls.' Opp'n at 44.  As for the involvement of some of these

Defendants in issuing standard operating procedures, Plaintiffs simply cite a paragraph referring

to undefined procedures, Pls.' Opp'n at 45 (citing Am. Compl. ¶ 60), which is a neutral act and

cannot alone be the source for liability.  *See Iqbal*, 129 S. Ct. at 1952.  Recognizing the

inadequacy of these allegations, Plaintiffs effectively seek to amend their complaint a *second*

time by including new allegations of what these procedures contained.  Pls.' Opp'n at 45

(alleging contents of standard operating procedures not contained in Amended Complaint).  Such

added allegations should be ignored because it is "axiomatic" that Plaintiffs cannot amend their

complaint through opposition papers.  *See, e.g.*, *3d Global Solutions, Inc. v. MVM, Inc.*, 552 F.

Supp. 2d 1, 8 (D.D.C. 2008).  And Plaintiffs fail to cite allegations showing that any of these

Defendants were aware that decedents faced a risk of serious harm.  Pls.' Opp'n at 45 (citing Am.

Compl. ¶¶ 78, 80, 98, 159).  Instead, Plaintiffs refer to alleged actions Defendants took or

perspectives they had *after* decedents took their own lives.  *Id.* (citing Am. Compl. ¶¶ 80, 159).

      In response to the showing by Defendants Rumsfeld, Dunlavey, Hill, Myers, and Miller

that the complaint contains no clear factual allegation that either decedent was subjected to any

---

      [11]Plaintiffs' assertion that Defendant Lehnert is liable for commanding Camp X-Ray
while decedent Al-Zahrani allegedly was housed there fails for the reasons stated above.

of the methods Defendants Rumsfeld allegedly approved at the request of the other Defendants,

Plaintiffs argue that Defendants seek too high a level of specificity. Pls.' Opp'n at 47. This

argument ignores *Iqbal*. Plaintiffs also argue that the tactics used on decedents "were in line

with" techniques Defendant Rumsfeld allegedly approved. *Id.* Plaintiffs' conclusory

characterization of their allegations does not correct the inadequacy of those allegations.

Tellingly, Plaintiffs do not point to a single factual allegation in the complaint to disprove

Defendants' showing that Plaintiffs failed to allege that decedents were subjected to any of the

tactics allegedly approved by Defendants.[12]

As for the alleged involvement of Defendants Craddock, Winkenwerder, Edmondson,

and Sollock in force-feeding decedents, Plaintiffs fail to show how such activity is

unconstitutional.[13] As Defendants already explained, using restraint chairs to force-feed hunger-

striking detainees is constitutional, as this Court held. Ind. Defs.' Mem. at 28 (citing *Al-Adahi*,

596 F. Supp. 2d at 120-22). Plaintiffs fail to address *Al-Adahi*, nor do they adequately

distinguish the forced-feeding at Guantánamo from other forced-feedings held constitutional.

Moreover, Plaintiffs' reference to a World Medical Association (WMA) declaration is irrelevant

because in a *Bivens* context, such declarations have no weight, and Plaintiffs cite no cases

---

[12]Plaintiffs refer in their Opposition to Defendant Hill's involvement in interrogations without any supporting factual allegations in their complaint, Pls.' Opp'n at 42, which is improper and entitled to no consideration in addressing this Motion to Dismiss. And Plaintiffs attempt to hold Defendant Miller liable for issuing undefined operating procedures and because he was "regularly apprised" of unspecified concerns by the ICRC, Pls.' Opp'n at 43, 45, neither of which is even remotely sufficient to state a claim under *Iqbal* pleading standards.

[13]This applies to Defendant Hood's alleged involvement in force-feeding as well.

indicating otherwise. *See Davis*, 468 U.S. at 194 n.12.[14]  In addition, these Defendants, as well as

Defendants Tornberg, Cowan, Burkhard, and Cullison, are immune from a *Bivens* suit because

under 10 U.S.C. § 1089, the Federal Tort Claims Act provides the exclusive remedy for alleged

misconduct committed by military medical professionals within the scope of their employment.

*Cf. Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000) (holding that parallel statute for Public

Health Service employees bars *Bivens* claims).[15]

## CONCLUSION

Defendants' Motion to Dismiss is straightforward.  The MCA bars Plaintiffs' claims, as

do special factors, a conclusion the D.C. Circuit recently reached in a nearly identical case.  In

any event, Defendants are entitled to qualified immunity because under binding precedent,

Plaintiffs' decedents do not have the rights Plaintiffs invoke and those rights were not clearly

established during the events at issue.  Nor do Plaintiffs adequately allege Defendants' personal

participation in any clearly established violations.  Plaintiffs in their Opposition fail sufficiently

to contest any of these reasons for dismissal.  It follows that this Court should grant the

Defendants' motion and should dismiss Plaintiffs' claims against them with prejudice.

---

[14]*Abdullahi v. Pfizer*, 562 F.3d 163 (2d Cir. 2009), is inapposite because that case involved a claim under the Alien Tort Statute, and the court cited the WMA declaration to determine the content of customary international law.  *See id.* at 174-75.

[15]Apart from the irony—given the number and length of footnotes in the Opposition—of Plaintiffs' assertion that arguments raised in footnotes need not be considered, the cases Plaintiffs cite allow a court to consider such arguments.  *See, e.g.*, *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999).

Dated: December 4, 2009                    Respectfully submitted,

                                           TONY WEST
                                           Assistant Attorney General, Civil Division

                                           ANN M. RAVEL
                                           Deputy Assistant Attorney General

                                           TIMOTHY P. GARREN
                                           Director, Torts Branch

                                           ANDREA W. McCARTHY
                                           Senior Trial Counsel

                                           _____/s/ Paul E. Werner_____
                                           ZACHARY C. RICHTER
                                           (Texas Bar # 24041773, under LCvR 83.2(e))
                                           PAUL E. WERNER
                                           (MD Bar, under LCvR 83.2(e))
                                           Trial Attorneys
                                           UNITED STATES DEPARTMENT OF JUSTICE
                                           Torts Branch, Civil Division
                                           P.O. Box 7146
                                           Ben Franklin Station
                                           Washington, D.C.  20044
                                           (202) 616-4152 (phone)
                                           (202) 616-4314 (fax)

                                           Attorneys for the United States and the Individual
                                           Named Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2009, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

following:


Pardiss Kebriaei
Shayana Kadidal
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
pkebriaei@ccrjustice.org
*Counsel for Plaintiffs*

Meetali Jain
International Human Rights Clinic
American University
WASHINGTON COLLEGE OF LAW
4801 Massachusetts Ave., N.W.
Washington, DC 20016
mjain@wcl.american.edu
*Counsel for Plaintiffs*


    /s/ Paul E. Werner
PAUL E. WERNER
(MD Bar, under LCvR 83.2(e))
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, DC 20044
(202) 616-4152 (phone)